UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| EAUX HOLDINGS, LLC | CIVIL CASE NO. 2:20-CV-01582 |
| | *Jury Trial* |
| VERSUS | |
| | JUDGE JAMES CAIN |
| SCOTTSDALE INSURANCE CO. | MAG. JUDGE KATHLEEN KAY |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE (*DAUBERT* MOTION) TO EXCLUDE THE TESTIMONEY AND REPORT OF PLAINTIFF'S PROFFERED EXPERT, ANDREW VANCHIERE**

**TABLE OF CONTENTS**

I. Factual Background....................................................................................... 2

II. Law and Argument ...................................................................................... 5

    A. Vanchiere's Report Fails to Comply with FRCP 26.......................... 5

    B. Vanchiere's Testimony Should be Excluded Because it Fails to Meet
    The Admissibility Criteria set Forth in Daubert................................. 6

        1. Vanchiere is Not a Licensed Appraiser and Is Not Permitted to
        Provide Testimony Regarding The Diminished Value of
        The Property ........................................................................... 8

        2. Vanchiere Failed to Illustrate a Reliable Adherence to Real Estate
        Value Methodology .............................................................. 10

            a. The Opinions Regarding Lost Rental Rate are Unreliable ........ 11

            b. Opinions Regarding Diminished Value Are Not Based on
            Any Valid Methodology............................................................ 14

c. The Basis of Vanchiere's Opinions Are Not Supported ........... 16

III. Conclusion ............................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aubrey v. Barlin, No.* 1:10-CV-076-DAE, 2015 WL 6002260,

(W.D. Tex. Oct. 14, 2015) ................................................................ 13

*Baugh v. Voyager Indem. Ins. Co*., No. CV 19-14275, 2020 WL 8257753

(E.D. La. Nov. 30, 2020) ................................................................ 8

*Burleson v. Tex. Dep't of Criminal Justice,* 393 F.3d 577 (5th Cir. 2004) ........................ 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) ....................*passim*

*David v. Signal, Int'l, LLC*, 2015 WL 65278 (E.D. La. Jan. 5, 2015) ............................. 5

*Grand Acadian, Inc. v. Fluor Corp*., No. 2:07 CV 295, 2010 WL 1053701

 (W.D. La. Mar. 22, 2010) ................................................................ 13

*Hebbler v. Turner*, No. CIV.A. 03-388, 2004 WL 414821

(E.D. La. Mar. 3, 2004) ................................................................ 9

*Hidden Oaks Ltd. v. City of Austin,* 138 F.3d 1036 (5th Cir. 1998)................................. 9

*Knight v. Kirby Inland Marine, Inc*., 482 F.3d 347 (5th Cir. 2007) ................................. 7

*Mathis v. Exxon Corp*., 302 F.3d 448  (5th Cir. 2002) ........................................ 7

*Moore v. Ashland Chem., Inc.*, 151 F.3d 269  (5th Cir. 1998) .................................. 5, 7, 8

*Baugh v. Voyager Indem. Ins. Co*., No. CV 19-14275, 2020 WL 8257753, at *1

(E.D. La. Nov. 30, 2020) ................................................................ 8

*United States v. 71.29 Acres of Land, More or Less, in Catahoula, Et Al. Pars*.,

376 F. Supp. 1221  (W.D. La. 1974) ....................................................... 9

**Statutes**

La. R.S. 22:1892 ................................................................ 2

La. R.S. 22:1973 ................................................................ 2, 3, 4

La. R.S. 37:3392 ................................................................ 1, 8

La. R.S. 37:3393 ................................................................ 2, 8

**Other**

Fed. R. Civ. P. 26........................................................................................... 1, 4, 5, 6

Fed. R. Evid. 702 ......................................................................................... 1, 6, 17

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| EAUX HOLDINGS, LLC | CIVIL CASE NO. 2:20-CV-01582 |
| | *Jury Trial* |
| VERSUS | |
| | JUDGE JAMES CAIN |
| SCOTTSDALE INSURANCE CO. | MAG. JUDGE KATHLEEN KAY |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE (*DAUBERT* MOTION) TO EXCLUDE THE TESTIMONEY AND REPORT OF PLAINTIFF'S PROFFERED EXPERT, ANDREW VANCHIERE**

MAY IT PLEASE THE COURT:

NOW INTO COURT, through undersigned counsel, comes Scottsdale Insurance Company ("SIC"), who respectfully files this memorandum in support of its motion to exclude the report and testimony of plaintiff's proffered expert, Andrew Vanchiere. Vanchiere's report fails to comply with Federal Rule of Civil Procedure 26, in that it fails to list any of Vanchiere's qualifications, the compensation he received, and fails to identify the facts or data he relied on in forming his opinions.

In addition, the report and testimony should be excluded because it fails to meet the reliability standards set forth in Federal Rules of Evidence 702 and *Daubert*. Vanchiere, who is not a licensed appraiser, is not qualified and is legally prohibited from giving opinions on diminished property values.[1] Further, Vanchiere fails to identify or rely on any

---

[1] Under Louisiana law, a "real estate appraisal" means the "analysis, opinion, or conclusion relating to the…value…of identified real estate, for or in expectation of compensation." La. R.S. 37:3392(1). A

market valuation methodologies in reaching his opinions. The entire basis of his opinion is inherently flawed, among other reasons, because it relies on a construction completion date that plaintiff's own contractor admits was impossible. Because all of Vanchiere's opinions are based on an artificial and meaningless completion date, his opinions are unreliable and properly excluded under *Daubert*.

## I.      Factual Background

This suit arises out of an insurance claim following Hurricane Laura that hit Lake Charles on August 27, 2020. Plaintiff, Eaux Holdings, asserted a claim under SIC policy number CPS3344220 for property damage to a commercial property located at 620 Esplanade in Lake Charles. Since the time the claim was submitted, SIC has tendered nearly $1.8 million; the owner executed a new long-term 15 year+ lease on the first floor and is actively in negotiations to lease the second floor which was unoccupied before the hurricane. Nevertheless, Plaintiff seeks bad faith penalties under La. R.S. 22:1892 and La. R.S. 22:1973. SIC disputes plaintiffs' allegations and maintains that its claims handling was conducted in a timely manner and on a reasonable and good faith basis.

On September 15, 2020, plaintiff's Public Adjuster, Skyline Adjusters, issued an inflated estimate to repair the building. Given the complexity of the claim, SIC retained an expert building consultant. SIC's consultant disputed the Skyline estimate with regard to scope, cost and repair methodologies.  Nevertheless, on September 23, 2020, SIC issued a $250,000 advance payment to plaintiff. Within 30 days of SIC receiving its building

---

person must hold a real estate appraiser license to provide an analysis opinion or conclusion related to the value of identified real estate. La. R.S. 37: 3393(A).

consultant's estimate, SIC issued a payment of $218,192.53, which represented the remainder of the actual cash value of the repairs, as dictated under the policy.

Beginning in September 2020, plaintiff began working with Encore, Inc. to serve as a general contractor to repair the Property.[2] Encore is a Kansas based company and did not hold a Louisiana Contractor's License during the early stages of the project. It is undisputed that Encore did not obtain a Louisiana Contractor's License, and therefore legally could not perform any work on the project, until November 19, 2020.[3] Encore commenced work on November 24, 2020.[4] Plaintiff did not enter into a written contract with Encore until December 20, 2020.[5] While it is alleged that plaintiff would not sign the contract claiming "funding" concerns, by November 23, 2020, plaintiff had received sufficient payments from SIC to meet the Encore contractual payment schedule.[6] Under the contract with Encore, the remaining sums were not due until plaintiff received the total insurance payments from SIC.[7]

Regarding its claim under 1973, plaintiff alleges that delayed payments resulted in a delay in "repair and habitability" of the property.[8] Plaintiff disclosed no expert to support the construction delay claim. In fact, the undisputed evidence shows that no delay in

[2] Exhibit 6, 30(b)(6) Deposition of Encore, Inc., Vo. I, p. 56.
[3] Exhibit 6, 30(b)(6) Deposition of Encore, Inc., Vol. I, p. 89, 94, 131; Exhibit 7, 30(b)(6) Deposition of Encore, Inc., Vol. II, p. 61, 80.
[4] Exhibit 6, 30(b)(6) Deposition of Encore, Inc., Vo. I, pp. 120, 215, Exhibit 8, Encore Contract, Encore 55.03.
[5] Exhibit 8, Encore Contract, Encore 55.03.
[6] By November 23, 2020, SIC paid a total of $468,192.53 ($250,000 advance plus the $218,192.53 payment). By January 8, 2021, SIC paid plaintiff a total of $645,924.5. Plaintiff paid the initial $100,000 payment to Encore on December 29, 2020, and the $250,000 Progress Payment on February 3, 2021.
[7] Exhibit 8, Encore Contract, Encore 55.
[8] Exhibit 1, Plaintiff's Answers to First Set of Interrogatories, Request for Admission and Requests for Production of Documents, Response to Int. Nos. 11 and 13.

3

construction is attributable to SIC, which is the subject of a separate motion for partial summary judgment on La. R.S. 22:1973 claim for actual damages.

Plaintiff disclosed a two page proffered expert report of Andrew Vanchiere, dated March 16, 2021, which purportedly provides a damage analysis of lost rental income and diminished property value.[9] Not only does the expert report fail to comply with FRCP 26, but Vanchiere is not qualified to offer such opinions, and his analysis is unreliable. Further, Vanchiere's opinions incorporate the flawed assumption that the building could have been completed by January 1, 2021, which is directly contradicted by the testimony of plaintiff's contractor and all project documents.

Vanchiere holds a real estate sale license and two commercial real estate designations.[10] He is not a licensed appraiser and is not a licensed real estate broker.[11] Vanchiere has never been consulted or testified as an expert in real estate.[12] Vanchiere could not identify any written standards or procedures used in forming his opinions. Instead, his opinions are based on speculation, and he failed to adhere to any reliable methodology.

SIC submitted an expert report from Stephen Duplantis, a licensed real estate appraiser.[13] The Duplantis report further demonstrates that Vanchiere's report and opinions are unreliable and that Vanchiere is not qualified to offer such opinions.[14]

---

[9] Exhibit 3, Vanchiere Report, Latter & Blum 000112.
[10] Exhibit 4, Deposition of Andrew Vanchiere, Vol. I, p. 13.
[11] Exhibit 4, Deposition of Andrew Vanchiere, Vol. I, pp. 57; 13.
[12] Exhibit 4, Deposition of Andrew Vanchiere, Vol. I, pp. 56-57.
[13] Exhibit 2, See Affidavit of Stephen Duplantis, Attachment A, Broker Consultation and Opinion of Value Review Report, prepared by Stephen Duplantis, dated August 12, 2021 ("Duplantis Report").
[14] Exhibit 2, Duplantis Report, pp. 9-10.

## II.    Law and Argument

### A.  Vanchiere's Report Fails to Comply with FRCP 26

Federal Rules of Civil Procedure 26(2) governs disclosure and expert report requirements. It provides, in pertinent part:

> (B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>
> > (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> >
> > (ii) the facts or data considered by the witness in forming them;
> >
> > (iii) any exhibits that will be used to summarize or support them;
> >
> > (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> >
> > (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> >
> > (vi) a statement of the compensation to be paid for the study and testimony in  the case.

The failure to include these mandatory items in an expert report exclusion of the report. *See, e.g., David v. Signal, Int'l, LLC*, 2015 WL 65278, at *3 (E.D. La. Jan. 5, 2015) (striking proffered expert report for failure to comply with requirements (i), (v), and (vi)).

The Vanchiere report does not meet the requirements of Rule 26(2)(B). First, as discussed at length below, the report fails to contain a basis for the opinions set forth in the report. Instead, Vanchiere's opinions are based on speculation, and he fails to identify any

process by which he reached his conclusions. Second, while the report contains several exhibits, Vanchiere fails to disclose what facts or data he relied on in forming his opinions.

For example, Exhibit A is entitled "Professional Office Market Inventory for Southwest Louisiana, Pre Hurricane Laura."[15] It includes a listing of buildings, square footage, "damage level" pre-storm rental rates and pre-storm vacancy. Nowhere in the report does Vanchiere explain how he obtained this information, what the information means, or what data or documents he relied on in preparing this exhibit. Vanchiere likewise failed to explain Exhibit B, or what data he relied on to prepare that exhibit.

The Vanchiere report further fails to list any qualifications whatsoever. It lists no publications. The report does not provide a list of other cases in which Vanchiere testified as an expert at trial. Finally, the report fails to contain a statement of the compensation to be paid for the testimony in the case.  As such, Vanchiere's report fails to comply with Federal Rule Civil Procedure 26 and should be excluded.

### B.  Vanchiere's Testimony Should be Excluded Because it Fails to Meet the Admissibility Criteria set Forth in *Daubert*

Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles to the facts of

---

[15] Exhibit 3, Vanchiere Report, Latter & Blum 112.05.

the case." The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals*, held that, in order to be admissible, proffered expert testimony must be both "reliable" and "relevant." *Knight v. Kirby Inland Marine, Inc*., 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589 (1993)). Both scientific and nonscientific expert testimony is subject to the Daubert framework.  *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577 (5th Cir. 2004).  "Reliability is determined by assessing 'whether the reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine, Inc*., 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589 (1993)).

The *Daubert* framework provides a list of factors that may aid a court in evaluating reliability: "(1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community." *Mathis v. Exxon Corp*., 302 F.3d 448, 460 (5th Cir. 2002). However, the *Daubert* inquiry is flexible, and courts have the discretion to consider which factors are relevant.   Additional "[f]actors often used to determine whether expert testimony is reliable include: whether the expert's opinion was developed for purposes outside of litigation; whether there is an analytical link connecting the case facts with the

7

expert's opinion; whether the expert 'adequately accounted for obvious alternative explanations'; whether the expert used the same level of intellectual rigor that would be used in the field; and whether the expert's field of expertise is known to be reliable for the relevant type of opinion." *Baugh v. Voyager Indem. Ins. Co.*, No. CV 19-14275, 2020 WL 8257753, at *1 (E.D. La. Nov. 30, 2020).

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir.1998). To meet this burden, a party cannot simply rely on their expert's assurances that she has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. *Id.*

### 1. Vanchiere is Not A Licensed Appraiser and Is Not Permitted to Provide Testimony Regarding The Diminished Value of The Property

Under Louisiana law, a "real estate appraisal" means the "analysis, opinion, or conclusion relating to the…value...of identified real estate, for or in expectation of compensation." La. R.S. 37:3392(1). **A person must hold a real estate appraiser license to provide an analysis opinion or conclusion related to the value of identified real estate**. La. R.S. 37: 3393(A). Vanchiere purports to opine as to the "diminished value" of the property at issue. Vanchiere admits he is not a licensed real estate appraiser.[16] As noted in the expert report of Steve Duplantis, Vanchiere "does not hold a license issued by the

---

[16] Exhibit 4, Deposition of Vanchiere, Vol. I, p. 57.

8

State of Louisiana to opine on the valuation of the subject property or value related issues pertaining to the subject property."[17]

In *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998), the Fifth Circuit upheld the district court's decision to exclude the expert testimony on market value of real property, and in particular, that the defendant's  actions lowered the market value of the property.   The court excluded the market value testimony because the proffered expert was not a licensed appraiser, and had no training in methods of appraisal, noting that the "essential elements of the real estate expert's competency include his knowledge of the property and of the real estate market in which it is situated, as well as his evaluating skill and experience as an appraiser." quoting *United States v. 71.29 Acres of Land, More or Less, in Catahoula, Et Al. Pars*., 376 F. Supp. 1221, 1226 (W.D. La. 1974).

In *Hebbler v. Turner*, No. CIV.A. 03-388, 2004 WL 414821, at *3 (E.D. La. Mar. 3, 2004), plaintiffs filed a *Daubert* motion to exclude the expert testimony of a proposed real estate value expert. The proposed expert had never testified as an expert, had not authored any publications and was not a licensed appraiser. The proposed expert based her opinion on her knowledge of market terms for comparable commercial office space, personal experience, company listings, general market knowledge, and interviews with defendants.

The court found that the expert's opinion as to the real property lease valuation did not demonstrate any adherence to the standard principals of appraisal. The proposed

---

[17] Exhibit 2, Duplantis Report, p. 8.

expert's opinion was "inadmissable because she failed to illustrate a reliable adherence to real estate valuation methodology" and gave no "indication of the method she used to appraise the relevant commercial real estate." Further, she was not a licensed real estate appraiser. As such, defendants failed to meet their burden under *Daubert*, and the motion to exclude expert testimony was granted.

Vanchiere offers opinions as to the market value of the property, but lacks the qualifications to offer such an opinion. Vanchiere is not a licensed appraiser. He is not qualified to give opinions as to the value of property under Louisiana law. As such, this motion should be granted, and Vanchiere's report and opinions should be excluded.

### 2. Vanchiere Failed to Illustrate a Reliable Adherence to Real Estate Value Methodology

In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595, 113 S. Ct. 2786, 2797, 125 L. Ed. 2d 484 (1993). Several factors which may be considered in determining the soundness of the scientific methodology include:

> 1) whether the theory or technique can be and has been tested;
>
> 2) whether the theory or technique has been subjected to peer review and publication;
>
> 3) the known or potential rate of error and the existence and maintenance of standards; and
>
> 4) whether the theory or technique used has been generally accepted.

*Id*. at 593-94, 113 S.Ct. at 296-97, 125 L.Ed.2d at 482-83.

Vanchiere's report fails to identify any methodology used to calculate lost rental income and diminished property value. In addition, Vanchiere could not point to any written standards or procedures he relied on in preparing his opinions.[18] Further, Vanchiere could not identify whether he uses these "methods" to reach market value conclusions outside of this litigation.

### a.  The Opinions Regarding Lost Rental Rate Are Unreliable

Giving no basis, background or process by which his reaches his opinions, the Vanchiere report states: "In comparing Exhibits D and E, the differential of the Net Present Value calculations of the leases is a measured loss of $490,845 in rental income alone."[19] Exhibits D and E purportedly compare a 10-year lease income with a 4-year lease income. Exhibits D and E show a "net present value" for each hypothetical lease term.[20] However, neither the report nor the exhibits provide any basis of how the "net present value" was calculated.

Defendant's expert, Stephen Duplantis, a certified General Real Estate Appraiser in Louisiana, provided the following opinions as to why Vanchiere's calculation of lost rental income is unreliable:

- The NPV calculation presented in Exhibit D utilizes a 3% discount rate with no support, analysis, or explanation on the reasonableness of the concluded 3% discount rate. For a valuation analysis, the formula utilized by appraisers is $R = Y - \Delta\%$, where R is the capitalization rate, Y is the discount rate, and $\Delta\%$ is percent change. A discount rate below the going-in capitalization rate implies that the value of a property is going to go down. Therefore, Duplantis opines that a 3% discount

[18] Exhibit 4, Deposition of Andrew Vanchiere, Vol I, pp. 78, 86, 88, 89, 95, 104; Deposition of Andrew Vanchiere, Vol I, pp. 13.
[19] Exhibit 3, Vanchiere Report, Latter & Blum 112.
[20] Exhibit 3, Vanchiere Report, Latter & Blum 112.11-112.12.

11

rate is not supported and is too low for a 10-year lease and the overall office market in Lake Charles, Louisiana.[21]

- Exhibit E references a market rental rate of $22.00 PSF. However, no information is provided as to how the $22.00 PSF market rent is supported by the market, how the premium is determined and calculated, or the expense structure for the market rate, i.e. gross or NNN. Duplantis notes that earlier in the report, the concluded market rental rate is $13.81 PSF.[22]

- The NPV calculation presented in Exhibit E utilizes a 4-year lease term expiring in midyear 2025. The NPV calculation then assumes that the space will remain vacant for the next 5 years, which is not supported. This assumption results in an understated NPV conclusion in comparison to Exhibit D, which utilizes a 10-year term. Further, as previously discussed, a 3% discount rate is utilized with no support, analysis, or explanation on the reasonableness of the concluded 3% discount rate.[23]

Vanchiere's deposition testimony further illustrates that his methods of lost rental income are unreliable. For example, Vanchiere testified that he picked a 3% discount rate because it was higher than the ten-year treasury yield.[24] Vanchiere did not use the value analysis formula, nor could he identify any written standards for real estate agents to select a discount rate for real estate transactions.[25]

Further, the "lost rental income" analysis is based on pure speculation. Exhibit D references a 10-year lease deal "based on an actual offer received."[26] Nowhere in his report does Vanchiere state that the 10-year lease deal fell through because the property could not be completed by December 2020. In fact, Vanchiere testified that the lease negotiations fell through because the parties could not agree on a rental rate,[27] and that the potential

---

[21] Exhibit 2, Duplantis Report, p. 9.
[22] Exhibit 2, Duplantis Report, p. 9.
[23] Exhibit 2, Duplantis Report, p. 9.
[24] Exhibit 4, Deposition of Andrew Vanchiere, Vol I, p. 85.
[25] Exhibit 4, Deposition of Andrew Vanchiere, Vol I, p. 88.
[26] Exhibit 3, Vanchiere Report, Latter & Blum 112.11.
[27] Exhibit 4, Deposition of Andrew Vanchiere, Vol I, pp. 82, 93.

lessee decided to wait for its current property to be restored.[28] As such, the entire basis for the opinion is grounded in improper facts and speculation. Louisiana law is clear that any claim for lost profits "must be proven with reasonable certainty and cannot be based on conjecture and speculation." *Grand Acadian, Inc. v. Fluor Corp.*, No. 2:07 CV 295, 2010 WL 1053701, at *2 (W.D. La. Mar. 22, 2010).

In addition, Vanchiere unilaterally decided to compare a speculative 10-year lease term with a 4-year lease term, which assumes that the property would remain vacant for 6 years. Again, Vanchiere provides no support for this assumption.

Vanchiere's report is devoid of any methodology or support for the conclusions reached. As such, the report and opinions should be excluded as unreliable. See *Aubrey v. Barlin*, No. 1:10-CV-076-DAE, 2015 WL 6002260, at *15 (W.D. Tex. Oct. 14, 2015)("[The expert's] opinion is based on her general knowledge of the real estate market conditions during the time period at issue as well as her personal experience as a real estate broker in the Austin, Texas area. However, her report fails to provide the Court with any indication of the process by which she arrived at her conclusions. Instead, it simply describes the market conditions and then abruptly arrives at its conclusions. In the total absence of any indicia of methodology, the Court finds that [the expert's] testimony must be excluded as unreliable.").

---

[28] Exhibit 4, Deposition of Andrew Vanchiere, Vol I, p. 80, 83-84.

### b.  Opinions Regarding Diminished Value Are Not Based on Any Valid Methodology

The Vanchiere report states: "Exhibit G, based on the same format as Exhibit F, compares a long-term lease that could have been generated last year to what we hope we can lease the second floor once it is finally complete, estimated to be in late June 2021… Using this approach, the diminished value to the owner is measured at $717,599."[29]

Exhibit G again comparable hypothetical and speculative scenarios of a 10-year lease with a "3-5 year lease."[30] Exhibit G includes calculations of "Net difference in Value after Completion" and "Net difference in Residual finance Funds."[31] Vanchiere fails to include in his report an explanation of any process that he used to prepare these calculations.

As outlined the Stephen Duplantis' report, the following are example of why these opinions and calculations are unreliable:

- Paragraph 4 of the report discusses going-in capitalization rates (OAR) based on a GSA tenant being secured for the 2nd floor vs. a non-GSA tenant. The report states an OAR of 6.00% would be reasonable if a GSA tenant is secured versus a 6.75% OAR for a non-GSA tenant being secured. However, no support, such as improved sale transactions, investor surveys, or national publications, is presented, explained, or discussed in regard to the concluded OARs. Considering these factors, the statement presented in the report are misleading to the trier of fact.[32]
- Exhibit G is a comparison assuming the 10-year lease was consummated, and the GSA lease is consummated. The analysis presented in Exhibit G utilizes two different capitalization rates (6.75% vs. 7.79%). The report states the 7.79% capitalization rate is "blended" and is derived by a relative percentage (weighted) of long-term GSA lease at 6% and the remainder at a capitalization rate of 9.5%. There is no discussion, explanation, or data presented such as sales comparables,

---

[29] Exhibit 3, Vanchiere Report, Latter & Bum 112.
[30] Exhibit 3, Vanchiere Report, Latter & Bum 112.14.
[31] Exhibit 3, Vanchiere Report, Latter & Bum 112.14.
[32] Exhibit 2, Duplantis Report, p. 9.

14

surveys, or national publications that support the capitalization rates utilized in the analysis.[33]

- Exhibit G references mortgage payments, which should not be considered as a value for the subject property, and instead should be based on an arm's length cash value. In addition, there is no support or analysis presented for the mortgage rate, mortgage terms, and other factors associated with the mortgage payment.[34]

- Exhibit G references a potential new loan proceed. However, this potential loan proceed cannot be tracked or supported by information presented in the report or Exhibit G. If the analysis in Exhibit G was an accepted and appropriate technique, which it is not, then there is no support, analysis, or explanation for any of the items considered in Exhibit G.[35]

- In conclusion, the stated diminished value of $717,599 lacks analysis, adequate data and information, and explanation, which results in a misleading diminished value to the trier of fact.[36]

Vanchiere fails to provide any information of how any of the numbers in Exhibit G were calculated, including: (1) the CAP rate; (2) the "potential new finance proceeds;" (3) the value of the building after completion; (4) the annual cash flow; or (5) the DCR ratio. As explained by Duplantis, no analysis was presented for mortgage payments, which is improper to consider in market value of a property regardless.

While none of this information was included in the report, Vanchiere testified that some of his "methodologies" resulted from his familiarity with commercial lending practices after he "organized a group to raise funds to start a bank."[37] Vanchiere's "familiarity" with commercial lending practices is insufficient to meet the *Daubert* standard.

---

[33] Exhibit 2, Duplantis Report, p. 10.
[34] Exhibit 2, Duplantis Report, p. 10.
[35] Exhibit 2, Duplantis Report, p. 10.
[36] Exhibit 2, Duplantis Report, p. 10.
[37] Exhibit 4, Deposition of Andrew Vanchiere, Vol I, pp. 107-108.

The Vanchiere report fails to identify any reliable methodology used to reach his conclusions. In fact, Vanchiere could not identify any such methodologies in his deposition. As such, the report fails to meet the admissibility requirements under *Daubert* and the testimony should be excluded.

### c.  The Basis of Vanchiere's Opinions Are Not Supported

Vanchiere's entire opinion is based on the flawed and supported premise that the building would be completed by January 1, 2021. Further, Vanchiere bases the "lost income" and "diminished property value" damages on the alleged loss of a 10-year lease deal, improperly insinuating that the lease deal fell through because the second floor could not be completed by January 1, 2021.[38] While Vanchiere does not provide any support for this contention in his report, he testified that he based this opinion on conversations with plaintiff's representative and a contractor (that plaintiff did not retain). However, project documents and deposition testimony from plaintiff's contractor, Encore, show that the entire basis of Vanchiere's opinion is fundamentally flawed, because the building, and importantly, the second floor, could not have been completed by January 1, 2021.

It is undisputed that plaintiff's contractor, Encore, was not licensed in Louisiana, and therefore could not perform any work on the project, until November 19, 2020.[39] Encore testified that the earliest it could have completed repairs to the entire building, and

---

[38] As shown above, this allegation is unsupported, as Vanchiere testified that the lease deal fell through because the parties could not agree to lease terms and the potential lessee decided to stay at its current space.
[39] Exhibit 630(b)(6) Deposition of Encore, Inc., Vol. I, p. 89, 94, 131; Exhibit 7, 30(b)(6) Deposition of Encore, Inc., Vol. II, p. 61, 80.

made the second floor available for tenants, was February 24, 2021.[40] Thus, even under plaintiff's inherently flawed theory of delay, the second floor could not have been completed before February 24, 2021, at the earliest.[41]

Because the entire basis for Vanchiere's opinion relies on a January 1, 2021 completion date, his entire analysis is unreliable, and not based on supported facts or data. Further, reliance on unsupported facts or data will not assist the jury. As such, the report and opinions do not meet the reliability standards under Federal Rules of Evidence 702 or under *Daubert*.

## III. Conclusion

SIC's motion to exclude the report and testimony of Vanchiere should be granted. Vanchiere is not qualified to offer and is legally prohibited from offering any opinions as to the market value of the property because he is not a licensed appraiser. Further, Vanchiere fails to adhere to any reliable methodologies in reaching his conclusions. His opinions are based on speculation, are unreliable and fundamentally flawed, because he relies on an improper construction completion date. As such, the report fails to meet the admissibility standards set forth in Federal Rules of Evidence 702 and *Daubert*. Accordingly, SIC requests an order from this Court excluding Vanchiere's testimony and report from trial of this matter.

---

[40] Exhibit 7, 30(b)(6) Deposition of Encore, Inc., Vol. II, pp. 216-219.
[41] Once Vanchiere realized that the basis for the construction completion date was flawed in his deposition, Vanchiere attempted to cure this flaw by stating that as a real estate agent, he is qualified to opine as to the time it should take to complete construction of a building following a hurricane. Exhibit 5, Deposition of Vanchiere, Vol II, pp. 39-40.  Not only is this opinion not in his report, but he admitted that he is not a construction expert. *Id*.

Respectfully submitted,
**KEOGH COX & WILSON, LTD.**

*John P. Wolff*

_____

JOHN P. WOLFF, III (14504)
MARY ANNE WOLF (26556)
RICHARD W. WOLFF (34844)
JENNIFER R. DIETZ (33804)
CHELSEA A. PAYNE (35952)
SYDNEE D. MENOU (35913)
COLE C. FRAZIER (38743)
701 Main Street
Baton Rouge, La 70802
Telephone:  225-383-3796
Facsimile:  225-343-9612
jwolff@keoghcox.com
mwolf@keoghcox.com
jdietz@keoghcox.com
rwolff@keoghcox.com
cpayne@keoghcox.com
smenou@keoghcox.com
cfrazier@keoghcox.com
*Counsel for Defendant,*
*Scottsdale Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has been served this day upon all known counsel of record by placing a copy in the United States Mail, properly addressed and postage prepaid, and/or by electronic transmission and/or facsimile transmission.

Baton Rouge, Louisiana, this 8th day of September, 2021.

*John P. Wolff*

_____

John Wolff

18