**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

**EAUX HOLDINGS, LLC**                                    **CIVIL CASE NO. 2:20-cv-01582**
Plaintiff

**versus**                                                              **JUDGE JAMES CAIN**

**SCOTTSDALE INSURANCE CO**                      **MAGISTRATE JUDGE KAY**
Defendant

<u>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO**</u>

<u>**EXCLUDE DEFENDANT'S EXPERT WITNESS**</u>

      **BY:**   **MICHAEL K. COX (Bar No. 22026)**
           **SOMER G. BROWN (Bar No. 31462)**
           **COX, COX, FILO, CAMEL & WILSON, LLC**
           723 Broad Street
           Lake Charles, LA 70601
           Phone: 337-436-6611
           Fax: 337-436-9541
           mike@coxatty.com
           somer@coxatty.com

# TABLE OF CONTENTS

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i.

**TABLE OF AUTHORITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii.

I.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.   LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.  The Testimony of Defendant's Expert Is Inadmissible Legal Opinion

        Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1.  *Standard for Excluding Legal Opinions* . . . . . . . . . . . . . . . . . . . . . . . 3

        2.  *Mr. Fey's Opinions are Legal Opinions and are*

            *Therefore Inadmissible.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        3.  *Mr. Fey's Opinions are Contrary to Louisiana Law.* . . . . . . . . . . . . . . 7

            a.  *Time to Pay Begins After Receipt of Satisfactory Proof of Loss* . .7

    B.  *Daubert* Standard for Admissibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        1.  *Reliability* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        2.  *Special Relevance Inquiry* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    C.  Defendant's Expert Falls Short of *Daubert*'s Requirements for

        Reliability and Helpfulness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

**Cases:**

*Aghighi v. Louisiana Citizens Prop. Ins. Corp.*, 2012-1096 (La. App. 4 Cir. 6/19/13), 119 So. 3d
      930, *writ denied sub nom. Aghighi v. Louisiana Citizens Ins. Corp.*, 2013-1737 (La.
      10/30/13), 124 So. 3d 1102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Askanase v. Fatjo*, 130 F.3d 657 (5th Cir. 1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 4, 5

*Beech v. Adriatic Marine, L.L.C.*, 511 F. Supp. 3d 750 (E.D. La. 2021) . . . . . . . . . . . . . . . . . 17

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786,
      125 L. Ed. 2d 469 (1993) . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . .. . . . 12, 13

*Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) . . . . . . . . . . . . . . .. . . . 14

*F.A.A. v. Landy,* 705 F.2d 624, 632 (2d Cir.), *cert. denied,* 464 U.S. 895, 104 S.Ct. 243,
      78 L.Ed.2d 232 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997) . . . . . . . . . . .14

*Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*, 654 F. Supp. 2d 518
      (E.D. La. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 11, 12

*J.R.A. Inc. v. Essex Ins. Co.*, 2010-0797 (La. App. 4 Cir. 5/27/11), 72 So. 3d 862 . . . . . . .9, 10, 11

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) . . 13, 14

*Louisiana Bag Co. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08), 999 So. 2d 1104 . . . . . . 7, 8

*Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794 (N.D. Ill. 2005) . . . . . . . .7, 15

*Marquette v. S. Fid. Ins. Co.*, No. CV 14-2311, 2015 WL 12564191 (E.D. La. Aug. 21, 2015). . 6

*Marketfare Annunciation, LLC v. United Fire & Cas. Co.*, No. CIV.A. 06-7232,
      2008 WL 1924242 (E.D. La. Apr. 23, 2008) . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . .16

*McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . 13

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*PCL Civ. Constructors, Inc. v. F.J. Burnell, Inc.*, No. 5:19-CV-00195,

     2020 WL 6304169 (W.D. La. June 11, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Peters v. Five Star Marine Serv.*, 898 F.2d 448 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sevier v. United States Fid. & Guar. Co.*, 497 So. 2d 1380 (La. 1986) . . . . . . . . . . . . . . . . . . . . 8

*Shaw Grp., Inc. v. Zurich Am. Ins. Co.*, No. 3:12-CV-00257-JJB,

     2014 WL 3407318 (M.D. La. July 10, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Specht v. Jensen,* 853 F.2d 805 (10th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 2011-1355 (La. App. 3 Cir. 4/4/12),

     88 So. 3d 1245 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Torres v. Cty. of Oakland*, 758 F.2d 147 (6th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

**Statutes:**

Federal Rule of Civil Procedure 51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Federal Rule of Evidence 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rule of Evidence 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

Federal Rule of Evidence 702, 2000 Advisory Committee Notes . . . . . . . . . . . . . . . . . . . . . . . .13

Federal Rule of Evidence 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rule of Evidence 704, Advisory Committee Notes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

La. R.S. § 22:1892 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

NOW INTO COURT, through undersigned counsel, comes **EAUX HOLDINGS, LLC** (hereinafter "Plaintiff"), who respectfully moves this Honorable Court to exclude Defendant **SCOTTSDALE INSURANCE CO** (hereinafter "Defendant")'s expert witness Louis Fey because his testimony is inadmissible legal opinion evidence, his opinions are based on incorrect understanding of Louisiana law, and in any event, his opinions fail to meet the *Daubert* requirement for reliability and helpfulness to the jury.

## I.     STATEMENT OF FACTS

This case stems from an insurance claim due to catastrophic damage caused by Hurricane Laura. Plaintiff's property was damaged on August 27, 2020 by hurricane force winds and wind driven rain when Hurricane Laura whipped through Lake Charles. The very next day, Plaintiff hired a professional estimator, Jeffrey S. Major of Skyline Adjusters, to inspect the property, who inspected it for the first time shortly thereafter. On September 15, 2020, Scottsdale inspected the property for the first time through Monte Jones, Scottsdale's independent field adjuster, who accompanied Jeffrey Major. That same day, Monte Jones was given a physical copy of Skyline's four-volume estimate showing $2,196,188.79 in damage and bills for $53,000.00 in temporary roof repairs already incurred. On September 18, 2020, Jeffrey Major sent electronically to Scottsdale that four-volume, 910-page estimate showing at least $2,196,188.79 in replacement cost damage caused by the hurricane along with $53,000.00 already incurred in temporary roof repairs.

On September 23, 2020, Skyline provided the mitigation bill from Allclear for $491,141.79 to Scottsdale. This was bill for mitigation work already completed, with all work invoiced.

On September 23, 2020, Scottsdale made an advance payment $250,000.00, well below even the mitigation work alr eady performed.

On September 27, 2020, Scottsdale sent its consultant Louis Collisson with Grecco Construction Consulting to inspect the property, who submitted a report to Scottsdale on October 26, 2020 showing only $600,087.78 in replacement cost damage, a number even Scottsdale now admits is abusively low, in part because Collisson failed to account for actual costs that had been presented nearly a month prior to Collisson's work. *See*, *e.g.*, Opinion of Mr. Fey, p.6 ("While Collissons's estimate turned out to be inaccurate . . .").

Scottsdale next hired Wardlaw to review Allclear's mitigation, who showed up without warning at the property on October 8, 2020, and demanded inspection despite the fact that Hurricane Delta was set to hit Lake Charles the next day and everything was closed in anticipation of the storm. Wardlaw inspected the building on October 30, 2020, and on November 12, 2020, recommended to Scottsdale to pay only $124,731.98 of the $491,141.79 already incurred. Scottsdale SSP disclosure, Wardlaw email, 11/12/2020, Bates # SIC_002698, attached as Ex. A.

On November 16, 2020, Plaintiff forwarded invoice for electrical work performed by Jacque Bourgeois Electric for $9,560.00.

On November 23, 2020, Scottsdale made a supplemental payment for the building in the amount of $218,192.53, sixty-nine days after Scottsdale was first made aware of the extent of the loss, and still far, far less than even Scottsdale eventually admitted was owed.

On December 7, 2020, Plaintiff filed suit.

On January 8, 2021, Scottsdale made a mitigation payment, based on Wardlaw's report, for only $177,731.98, which constitutes the $124,731.98 Wardlaw recommended for payment back on November 12, 2020, plus the $53,000.00 incurred for temporary roof repair, which Scottsdale first received on September 15, 2020, and then again on September 18, 2020. That means, by Scottsdale's own records, the partial payment for the mitigation costs was fifty-seven

days after they knew at least that much was owed, well past the thirty-day statutory deadline. Even worse, the $53,000.00 for roof mitigation was a whopping 115 days after it was first notified that this bill was owed, and 112 days after it was notified again via email. These payments were undisputed and undisputedly far past the statutory time to pay.

Scottsdale retained JS Held to review Collisson's work, and then eventually as an adjuster after the initial settlement conference failed. JS Held inspected the property through its employee, Granger Stuck, on April 19, 2021, well after mitigation work had been completed and some repairs had begun. Mr. Stuck's inspection resulted in an additional payment of $1,120,726.49, for a total paid at that point of $1,796,091, nearly three times the amount that Scottsdale's first report showed.

Thus, by Scottsdale's own account, it underpaid Plaintiff by more than a million dollars, and paid it months after it was due. This is the history of the claims handling that Mr. Fey, Scottsdale's legal expert, attempts to paint as "professional" and "reasonable." Because Mr. Fey's opinion's are legal opinions encompassing the jury's ultimate decision, and because these opinions are based on an   incorrect understanding of Louisiana law, and furthermore, are irrelevant, unreliable and unhelpful to the jury, they must be excluded.

## II.    LAW AND ARGUMENT

### A.  The Testimony of Defendant's Expert Is Inadmissible Legal Opinion Evidence

#### 1.   *Standard for Excluding Legal Opinions*

[I]t must be posited as an *a priori* assumption [that] there is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge.

*Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (quoting *Specht v. Jensen,* 853 F.2d 805, 807 (10th Cir.1988)).

Only the judge may instruct the jury on the correct law, and therefore, any attempt by an expert to coach the jury on what the law is amounts to nothing more than an end-run around the jury charge conference and the appointment of one party's own private judge. This is why legal "expert opinions" are uniformly inadmissible.

While Rule 704 provides that "[a]n opinion is not objectionable *just because* it embraces an ultimate issue," F.R.E. 704(a) (emphasis added), federal courts have repeatedly excluded expert testimony on the grounds that it is a legal opinion. When an "expert" opines on the law and its proper application, it is "not only inadmissible but harmful" to the legal system. *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (citing *Specht v. Jensen,* 853 F.2d 805, 807 (10th Cir.1988)).

> [W]hile experts could give their opinions on ultimate issues, our legal system reserves to the trial judge the role of deciding the law for the benefit of the jury. Moreover, allowing attorneys to testify to matters of law would be harmful to the jury. First, the jury would be very susceptible to adopting the expert's conclusion rather making its own decision. There is a certain mystique about the word "expert" and once the jury hears of the attorney's experience and expertise, it might think the witness even more reliable than the judge. Second, if an expert witness were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position. Such differing opinions as to what the law is would only confuse the jury.

*Id.* (internal citations omitted).

For these reasons, a legal opinion is also inadmissible under F.R.E. 403, as its probative value is substantially outweighed by the danger of confusion and misleading the jury.

The Fifth Circuit excluded legal opinions similar to the ones offered by Mr. Fey in the *Askanase* case. In that case, the bankruptcy trustee of a company sued the company's former directors for breach of fiduciary duty. *Askanase*, 130 F.3d at 663. The trustee offered the opinion testimony of a so-called expert on director misconduct. The Fifth Circuit affirmed the exclusion of the expert opinion, because it was "a legal opinion and inadmissible," holding that "[w]hether

the officers and directors breached their fiduciary duties is an issue for the trier of fact to decide. It is not for [the expert] to tell the trier of fact what to decide." *Id.* at 673.

### 2.  *Mr. Fey's Opinions are Legal Opinions and are Therefore Inadmissible*

Many of Mr. Fey's opinions are so broad as to encompass legal opinions, and therefore they must be excluded. For example, Mr. Fey's first opinion is simply that "Scottsdale handled this claim in a professional manner." Fey's Report, p.5. This opinion goes beyond simple explanations of industry standards, and could encompass the ultimate assertion that Scottsdale therefore was not in bad faith because it handled everything professionally. This is nearly identical to the issue presented in the Advisory Committee Notes to F.R.E. 704, which explains:

> Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

Fed. R. Evid. 704, Advisory Committee Notes for 1972 Proposed Rules.

Mr. Fey's very first opinion suffers from the same problem that runs throughout his report – Mr. Fey's entire report is simply a legal conclusion, telling the finder of fact what to decide, while dressed up in language about an idealized insurance claims adjuster. This is not helpful to the jury. Indeed, it is confusing and irrelevant, as the ultimate decision of whether Scottsdale adjusted this claim professionally and in good faith "is an issue for the trier of fact to decide. It is not for [the expert] to tell the trier of fact what to decide." *Askanase*, 130 F.3d at 673.

Mr. Fey continues to do this throughout his report and not only claims that the industry standards were adhered to, but also that, therefore, Scottsdale did nothing wrong. For instance, Mr. Fey opines that "Scottsdale's use of experts and reliance upon their opinions was **reasonable** and in accordance with insurance industry standard practice." Fey Report, p.5 (emphasis added). Mr. Fey could explain how Scottsdale's actions complied with industry standards, but he is not allowed

to make the next leap and explain that Scottsdale was therefore reasonable. That is for the jury to decide. Furthermore, Plaintiff contests that Scottsdale's reliance on so-called experts who were contradicted by Scottsdale's own reports is "reasonable" in any way.

Mr. Fey repeatedly opines that Scottsdale was reasonable: "Scottsdale's use of experts and reliance upon their opinions was reasonable . . ." at p.5, "Scottsdale's dispute of Eaux's claim was reasonable . . ." *id.*, "Scottsdale's handling of this complex claim was reasonable and well done," *id.* at 7. This is specifically the type of testimony that has been excluded by federal courts in the past. *See*, *e.g.*, *Marquette v. S. Fid. Ins. Co.*, No. CV 14-2311, 2015 WL 12564191, at *2 (E.D. La. Aug. 21, 2015) ("Plaintiff's expert's testimony should be excluded to the extent he intends to testify as to whether Defendant's actions constituted 'bad faith,' 'unreasonable,' or 'arbitrary and capricious' conduct."). An expert is no more allowed to opine on what is "reasonable" than he is allowed to opine on what is "unreasonable."

Similarly, Mr. Fey opines that "The timeframe to pay undisputed amounts begins to run once Scottsdale received its building consultants estimate and had an opportunity to review it, not from the date Skyline provided it with its four-volume claim submission." Fey Report at p.5. This opinion is a legal conclusion, one that is based on Mr. Fey's decision that only the latest report to Scottsdale constitutes "satisfactory proof of loss," a term of art defined by the Supreme Court, and not any earlier report. Mr. Fey provides no explanation as to why Plaintiff's very thorough, four-volume submission does not qualify as satisfactory proof of loss, nor any explanation as to why Collisson's report does not qualify either. This is mere *ipse dixit*, and it precisely the sort of legal conclusion that is disallowed. More to the point, as further explained below, this opinion of Mr. Fey's is based on an *incorrect* understanding of Louisiana law. Not only is it an impermissible legal opinion, it is a legal opinion based on incorrect law, and is thus doubly inadmissible.

6

### 3.  Mr. Fey's Opinions are Contrary to Louisiana Law

More fundamentally, an expert cannot be allowed to testify about law which is incorrect. *See Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*, 654 F. Supp. 2d 518, 522 (E.D. La. 2009) (excluding entirety of offered expert's testimony when the expert's report was "rife with legal conclusions, which are inadmissible" and were also "legally incorrect"); *accord Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005) ("Expert opinions that are contrary to law are inadmissible. They cannot be said to be scientific, to be reliable, or to be helpful to the trier of fact. Indeed, 'it is not an "expert" opinion, but rather a personal opinion...'") (internal citations omitted).

Mr. Fey opines on multiple points that, essentially, Scottsdale did not violate any penalty statute for late payment because it "paid all undisputed amounts timely," or that Scottsdale "paid the undisputed loss within the 30-day time frame allowed." Fey Report at p.5. This assumes that Mr. Fey is using the correct time for when Scottsdale's obligations to pay begin to run. Mr. Fey explains when he thinks Scottsdale's time to pay began ticking: "The time frame to pay undisputed amounts begins to run once Scottsdale received its building consultant's estimate and had an opportunity to review it, not from the date Skyline provided [Scottsdale] with its four-volume claim submission." This is a fundamental misstatement of the law in Louisiana.

### a.  Time to Pay Begins After Receipt of Satisfactory Proof of Loss

In the landmark opinion *Louisiana Bag Co., Inc. v. Audubon Indemnity Co.*, the Louisiana Supreme Court explained that, in a claim for penalties for late payment under La. R.S. § 22:1892

> requires a showing that (1) an insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause.

*Louisiana Bag Co. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08), 999 So. 2d 1104, 1112–13.

Therefore, the time for Scottsdale's payment begins to run as soon as it receives "satisfactory proof of loss." The Supreme Court went on to explain the flexible understanding of what constitutes "satisfactory proof of loss" in this state:

> [P]roof of loss is a flexible requirement to advise an insurer of the facts of the claim, and that it need not be in any formal style. As long as the insurer receives sufficient information to act on the claim, the manner in which it obtains the information is immaterial.

*Louisiana Bag Co. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08), 999 So. 2d 1104, 1119 (internal citations and quotation marks omitted).

Nowhere is there a requirement that Scottsdale gets to wait until it reviews a building consultant's estimate to trigger "satisfactory proof of loss," after it already received its own adjuster's estimate and after it received an extremely thorough submission from Plaintiff's adjuster only weeks after the hurricane. In fact, putting such a requirement on what constitutes "satisfactory proof of loss" is a total rejection of the Supreme Court's stated test that there are no formal requirements for this flexible standard. This would also allow an insurer to wait as long as it chose to before unilaterally determining what to pay – this flies in the face of and completely undermines Louisiana law.

Scottsdale already had more than "sufficient information to act on the claim," long before its latest report revealed the many shortcomings of its first inspection. Mr. Fey is wrong when he opines that insurance companies get to wait until they have all the information they want, and not just "sufficient" information they need, in order to trigger obligations under La. R.S. § 22:1892. *See*, *e.g.*, Fey Report at p.9 ("The initial inspection is just that, an initial evaluation to assess how bad the claim is . . .").

The following are a few examples of satisfactory proof of loss under the Supreme Court's flexible requirement: (1) a handwritten estimate of the cost of repairs, *Sevier v. United States Fid.*

& *Guar. Co.*, 497 So. 2d 1380 (La. 1986); (2) personal inspection of an insured's property by an independent adjuster, *J.R.A. Inc. v. Essex Ins. Co.*, 2010-0797 (La. App. 4 Cir. 5/27/11), 72 So. 3d 862, 881); (3) proof of insurance, photographs, and salvage information, *State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 2011-1355 (La. App. 3 Cir. 4/4/12), 88 So. 3d 1245); and (4) an adjuster's opportunity to discover damages but failure to do so, *Aghighi v. Louisiana Citizens Prop. Ins. Corp.*, 2012-1096 (La. App. 4 Cir. 6/19/13), 119 So. 3d 930, 934-35).

In *Aghighi*, the Louisiana Fourth Circuit Court of Appeal found that the insurance company had satisfactory proof of loss upon the first inspection by its adjuster who failed to account for foundation damage. *See Aghighi*, 119 So.3d at 934; *see also J.R.A. Inc. v. Essex Ins. Co.*, 2010-0797 (La. App. 4 Cir. 5/27/11), 72 So. 3d 862, 881 ("A personal inspection of an insured's property by an adjuster for the insurance company also constitutes satisfactory proof of loss.") (citing *Paul v. Nat. Am. Ins. Co.,* 361 So.2d 1281, 1285 (La. App. 1 Cir. 1978)).

In *Aghighi*, that first adjuster' report was submitted on October 28, 2008. *Aghighi*, 119 So.3d at 934. After that first adjuster failed to adjust the foundation damage due to the covered hurricane event, the homeowner solicited a thorough estimate from his own contractor and submitted it on April 3, 2009. In response to the homeowner's estimate, the insurance company later sent out another adjuster and engineer to reinspect the property, and following that second report, the insurance company made another "unconditional payment" on May 8, 2009 for some damages that "should have been" included in the first adjuster's report. *Id.*

The Fourth Circuit found that the first inspection constituted satisfactory proof of loss, and that the insurer's second "unconditional payment" was therefore more than six months late. *Id.* Moreover, the Fourth Circuit rejected the insurance company's argument that its "subsequent

payment was timely made because it was within 30 days of the second adjuster's report," *id.* at 935, because:

> The insurer's duty under La. R.S. 22:1892 mandates more than merely sending an adjuster to the insured's property to take pictures and calculate numbers on less than all the damage. **It would defeat the purpose of the statute to allow an inadequate and unreasonably low adjustment, done within the requisite time delays**, to satisfy the insurer's obligation to the insured. **Likewise, allowing a "readjustment" done approximately six months later to cure the original bad conduct without any penalty would be condoning the insurer's actions**. Accordingly, this Court finds that the mishandling of the claim by LCPIC was arbitrary, capricious, and without probable cause. Therefore, we find that the trial court was manifestly erroneous in failing to award penalties and attorney fees.

*Aghighi v. Louisiana Citizens Prop. Ins. Corp.*, 2012-1096 (La. App. 4 Cir. 6/19/13), 119 So. 3d 930, 935, *writ denied sub nom. Aghighi v. Louisiana Citizens Ins. Corp.*, 2013-1737 (La. 10/30/13), 124 So. 3d 1102 (emphasis added).

Scottsdale inspected the property and received Skyline's four-volume proof of loss on September 15, 2020. Mr. Fey is attempting to do in his report precisely what the Fourth Circuit says is impermissible: excuse Scottsdale's earlier, inadequate estimate by claiming that (1) the first estimate did not count as "satisfactory proof of loss," and that (2) later, more thorough estimates from its own agents cured or washed away its earlier mishandling of the claim. Fey Report at p.13 ("Scottsdale issue a check . . . on November 22, 2020, within the 30-day time requirement."). This is wrong. Mr. Fey's opinion is entirely contrary to the law on multiple points and must be excluded.

In fact, Mr. Fey's opinions show that penalties and attorney fees are warranted in this case. Mr. Fey opines "After receiving J.S. Held's estimate [on August 15, 2021], Scottsdale promptly paid the recommended additional costs without any deduction for depreciation or even the policy's deductible." Fey Report at p.7. This is precisely what supported penalties and attorney fees in *Aghighi*: even though the insurer paid after the second report, it was already too late. The same occurred in *J.R.A.*: the hurricane occurred on August 29, 2005; due to difficulties in reaching the

insured, the first inspection did not take place until November 10, 2005; *J.R.A.*, 72 So.3d at 865; a later inspection with an engineer (Mr. Vanderbrook) occurred on January 20, 2006, *id.*; and the independent adjuster (Mr. Babin)'s report was not submitted to the insurance company until May 19, 2006, *id.* at 867. Despite the later inspections and reports, the Court of Appeal specifically held that "a personal inspection of an insured's property by an adjuster for the insurance company [*i.e.*, the first adjuster] also constitutes satisfactory proof of loss." *Id.* at 881. Mr. Fey's repeated opinions that the first inspection does not count is contrary to the law of Louisiana, adds conditions to the Louisiana Supreme Court's holding that satisfactory proof of loss is a flexible standard, and is directly contrary to multiple, nearly identical appellate opinions. Mr. Fey's opinions must be excluded. *Imperial Trading Co.*, 654 F. Supp. 2d at 522.

Mr. Fey's assumption on what constitutes "satisfactory proof of loss" highlights the insidious risk of allowing legal opinions to go to a jury:

> The problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury. This "invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law."

*Torres v. Cty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) (quoting *F.A.A. v. Landy,* 705 F.2d 624, 632 (2d Cir.), *cert. denied,* 464 U.S. 895, 104 S.Ct. 243, 78 L.Ed.2d 232 (1983)).

Similarly, Mr. Fey implies that because Plaintiff's estimate is still further away from Defendant's second report, that both sides are at fault. *See* Fey Report at p.14-15. This is a classic example of the *tu quoque* logical fallacy. Defendant's admission that it underpaid the Plaintiff at least $1,011,905.94 does not make the additional claims by Plaintiff's less accurate. Regardless, it is not the law that the accuracy of an insured's estimate somehow absolves the insurance company from paying for benefits it owes under the policy. It is the underlying assumption in Mr. Fey's opinion that is contrary to the law and which might mislead the jury.

Even if Mr. Fey never opines to the jury that Defendant is reasonable and in good faith, he will communicate to the jury his incorrect understanding of Louisiana laws and irreparably taint the jury's ability to understand when and why an insurance company can be in bad faith. Even if his report offered more than his own personal conclusions that Defendant was reasonable (which it does not), his report is entirely contaminated by his misunderstanding of an insurer's obligations under Louisiana law. His entire report must be struck, and he must not be allowed to testify, in the same way that Judge Vance excluded the testimony of the expert in *Imperial Trading* when his report was "rife with legal conclusions" and were also "legally incorrect"). 654 F.Supp 2d at 522.

In sum, a party's use of a legal "expert" to opine on the ultimate issue usurps the judge's role as legal expert, violates F.R.C.P. 51's requirements for instructing the jury, is irrelevant because only the judge's instructions matter, and is prejudicial insofar as a jury is likely to give great weight to a legal expert's opinions and will likely confuse the jury, considering the competing legal instructions issued by the expert and the judge. These legal opinions are especially inadmissible because they are based on incorrect understandings of Louisiana law.

### B. *Daubert* Standard for Admissibility: Reliability and Helpfulness to the Jury

As if all of the above was not enough, Mr. Fey's opinions also fail to meet the *Daubert* standard of being both reliable and helpful to the jury, and must be excluded on that basis.

### 1. *Reliability*

Federal Rule of Evidence 702 sets forth the rule for admissibility of expert opinion testimony and "is in effect a codification of the United States Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals*." *PCL Civ. Constructors, Inc. v. F.J. Burnell, Inc.*, No. 5:19-CV-00195, 2020 WL 6304169, at *1 (W.D. La. June 11, 2020).

Rule 702 provides that an expert may only be allowed to give opinion testimony if (1) the expert is qualified, (2) the opinion is based on sufficient facts, (3) the opinion is based on reliable principles and methods, (4) and those methods are reliably applied to the facts of the case. F.R.E. 702. Of course, the opinion evidence is not admissible unless it will help the trier of fact understand the evidence. *Id.* In short, the rule expands on *Daubert*'s holding that expert testimony must be both "reliable" and "relevant." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 2799, 125 L. Ed. 2d 469 (1993). Rule 702 also incorporates the Supreme Court's holding in the *Kumho Tire Co.* opinion that the judge's role as gatekeeper of relevant and reliable expert testimony extends beyond purely "scientific" testimony and applies to experts who are qualified purely by training, experience, or observance, such as engineers. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 119 S. Ct. 1167, 1175, 143 L. Ed. 2d 238 (1999).

The Advisory Committee Notes for 2000 Amendments to F.R.E. 702 provides several non-exclusive factors for testing the reliability of expert testimony, including:

> "Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;"

> "Whether the expert has adequately accounted for obvious alternative explanations;"

> "Whether the expert 'is being as careful as he would be in his regular professional work outside his paid litigation consulting;' and

> "Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

The expert's opinion must also be based on sufficient facts, and not just mere speculation or subjective belief. *McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 432–33 (5th Cir. 2020) (excluding expert pulmonologist's opinion when based on studies that were consistent with, but did not conclusively support, his opinion, which showed a "notable analytical gap" between his

supporting studies and his opinion); *see also Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 279 (5th Cir. 1998) (excluding clinical doctor's opinion when based only on an MSDS sheet, a speculative study, and temporal proximity between exposure and injury). Expert testimony is properly excluded if the "opinion evidence [ ] is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519, 139 L. Ed. 2d 508 (1997).

### 2. *Special Relevance Inquiry*

The requirement for "relevance" has a special meaning in the context of expert testimony:

> The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, F.R.E. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue. *Daubert,* 509 U.S. at 591–92. Put differently, Rule 702 "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."

*Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

Thus, expert testimony may be irrelevant if it is not helpful to the jury, for instance, if no specialized knowledge is required to understand the issue. *See*, *e.g.*, *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990) (expert testimony is unnecessary when the "jury could adeptly assess this situation using only their common experience and knowledge.").

## C. Defendant's Expert Falls Short of *Daubert*'s Requirements for Reliability and Helpfulness

> The objective of [the *Daubert* gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 1176, 143 L. Ed. 2d 238 (1999).

As an initial matter, Mr. Fey's report relies over and over again on incorrect understandings of Louisiana law, and as such, "cannot be said to be scientific, to be reliable, or to be helpful to the

trier of fact." *Loeffel Steel Prod., Inc.*, 387 F. Supp. 2d at 806. For this reason alone, Mr. Fey's opinions fail the *Daubert* test of reliability. But there are more shortcomings.

Rule 702(b) specifically requires that an expert's testimony is based on sufficient facts or data, and yet Mr. Fey continues to rely on Defendant's first report, prepared by Mr. Collisson, as a basis for why Scottsdale was reasonable, even while admitting that Collisson's report was "inaccurate." *See*, *e.g.,* Fey Report at p.5 ("Scottsdale had no reason to question Collisson's experience and abilities," and *id.* at p.6 ("While Collisson's estimate turned out to be inaccurate . . .")). Scottsdale itself eventually agreed that the **undisputed** amount owed to Plaintiff was nearly three times what Collisson originally estimated. *Compare* Collisson's report, finding only $600,087.78 replacement cost value and $466,491.36 actual cash value damages, *with* JS Held's report, prepared by Granger Stuck, showing an undisputed amount of $1,780,089.00 in damages to the building. Scottsdale itself paid the amount recommended by JS Held and Granger. It is clear that even the Defendant realized that Collisson's report was unreliable. Yet Mr. Fey continues to rely upon it. His opinion is not based on sufficient facts (or "facts" at all).

Another example, Mr. Fey identifies a file note from Defendant at page 12 of his report, which he states "highlights some of the more glaring concerns identified" by the Defendant. However, one of those "glaring concerns," in bold no less, is the public adjuster's claims for "exterior wall cladding," which even Mr. Fey and Defendant's other experts eventually agreed needed to be replaced. *See* Fey Report at p.6 ("While J.S. Held [Defendant's other expert] agreed with Skyline [Plaintiff's expert] that the exterior panels would need to be removed . . ."). How can something Defendant admits is incorrect constitute a reasonable concern?

Mr. Fey's continued reliance on a report that has been refuted by his own client raises the issue of "[w]hether the expert 'is being as careful as he would be in his regular professional work

outside his paid litigation consulting." If Mr. Fey, in his ordinary business, would rely on such a proveably inaccurate report, it would raise further questions concerning his qualifications.

Another assumption underlying Mr. Fey's entire report is that only Defendant's last report is accurate. *See*, *e.g.*, Fey Report at p.9 ("Had Scottsdale buckled under the criticism it received for resisting Eaux's demands, it would have severely overpaid the claim."). Mr. Fey did not inspect the property himself, and admits that Defendant's initial assessment was woefully inadequate, yet continues to believe that Plaintiff's first, thorough evaluation was "inflated." *See*, *e.g.*, footnote 8 at p.11.

Finally, expert opinions must be relevant in the sense that they are helpful to the jury. Mr. Fey's opinions are fundamentally irrelevant, in the sense that he is attempting to usurp the judge's legal instructions, and fundamentally unhelpful. Even if Mr. Fey was correct on the law (which he is not), his legal opinions are unhelpful because the judge, not the witness, instructs the jury on the law, and his conclusory opinions on the ultimate decision are unhelpful because that is fundamentally the role of the jury, and not the witness.

Furthermore, this case presents the sort of thing a jury can grasp on its own – there are no complicated "disputes regarding multiple insured entities, multiple layers of excess coverage, and customized policy endorsements modifying exclusions not found in homeowner's policies." *Shaw Grp., Inc. v. Zurich Am. Ins. Co.*, No. 3:12-CV-00257-JJB, 2014 WL 3407318, at *2 (M.D. La. July 10, 2014). In the present case, there is only one insured, one building, one policy, and presents a relatively straightforward case – did Defendant obtain enough information to properly adjust the claim? And When? This case is much more like the *Marketfare Annunciation* case, wherein Judge Barbier excluded a proposed expert who would testify at trial that the insurance company in that Hurricane Katrina case did not act in bad faith. *Marketfare Annunciation, LLC v. United Fire &*

*Cas. Co.*, No. CIV.A. 06-7232, 2008 WL 1924242, at *2 (E.D. La. Apr. 23, 2008) (rejecting the usefulness of an expert, even in a commercial claim, because "[t]he claims in this case do not seem to be overly complicated. At its most basic, the claim is there was no reasonable basis to deny payment of certain claims").

  The jury is capable of determining on its own whether it was reasonable for the Defendant insurance company in the present case to wait until August of this year to pay for damages it was made aware of in September of last year, even if none of them have been in that precise situation before. *See*, *e.g.*, *Beech v. Adriatic Marine, L.L.C.*, 511 F. Supp. 3d 750, 759–60 (E.D. La. 2021) ("While the average juror may not have turned a fuel valve [on a vessel in a maritime case], they have almost certainly tried opening a pickle jar from the back of the cupboard and failed. [The expert's] opinion is unnecessary."). Jurors are capable of understanding the impact of a thirty-day deadline. Jurors know what an underpayment looks like. This is largely an issue of timing and amount of damages. Mr. Fey's expertise in the nuances of secret best practices and managerial oversight will not help the jury decide if an undisputed payment was made more than 30 days late.

## III. CONCLUSION

  For the reasons more fully expressed above, Plaintiff respectfully requests that this Honorable Court exclude Defendant's expert witness from testifying. The expert is not qualified to instruct the jury, his opinions are based on assumptions, and his methodology for reaching those assumptions is highly suspect.

WHEREFORE, Plaintiff **EAUX HOLDINGS, LLC** prays that this Honorable Court grant

this motion and exclude Defendant's expert witness Louis Fey from testifying in the present case.

RESPECTFULLY SUBMITTED

**COX, COX, FILO, CAMEL & WILSON, LLC**

**BY:**   /s/ Somer G. Brown
            **MICHAEL K. COX (Bar No. 22026)**
            **SOMER G. BROWN (Bar No. 31462)**
            723 Broad Street
            Lake Charles, LA 70601
            Phone: 337-436-6611
            Fax: 337-436-9541
            mike@coxatty.com
            somer@coxatty.com

```
-----------------------------------------------------------
Date:              11/12/2020 09:41:39 AM
Subject:           [EXTERNAL] Claim # 01980195
From:              Alex Braig <braig_alex@wardlawclaims.com>
To:                Lock, Adam <LOCKA1@nationwide.com>
CC To:
BCC To:
-----------------------------------------------------------
```

Nationwide Information Security Warning: This is an EXTERNAL email. Use CAUTION before clicking on links, opening attachments, or responding. (Sender: braig_alex@wardlawclaims.com)

_____


File
review complete.

Could not reach a settled amount. Recommend payment for the undisputed amount of $124,731.98.

Alex Braig
WRT,ASD,OCT,FSRT,TCST
Certified
Phone: 254-410-6836
Cell: 254-744-6365




```
-----------------------------------------------------------
Attachments:
Attachment #1:  audit.pdf
Attachment #2:  invoices.pdf
Attachment #3:  logs.pdf
Attachment #4:  estimate.pdf
Attachment #5:  comparative.pdf
Attachment #6:  MAR.pdf
Attachment #7:  Payment Request.pdf
-----------------------------------------------------------
```

PLAINTIFF'S EXHIBIT A

SIC_002698