## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

**EAUX HOLDINGS L L C**                    **CASE NO.  2:20-CV-01582**

**VERSUS**                                 **JUDGE JAMES D. CAIN, JR.**

**SCOTTSDALE INSURANCE CO**                **MAGISTRATE JUDGE KAY**

### MEMORANDUM RULING

Before the Court is a "Motion for Partial Summary Judgment to Dismiss Bad Faith Claims" (Doc. 40) filed by Defendant Scottsdale Insurance Co. ("Scottsdale").

### FACTUAL STATEMENT

On August 27, 2020, Hurricane Laura made landfall in Cameron, Louisiana and struck Lake Charles, Louisiana as a Strong Category 4 hurricane; it was the fifth strongest hurricane to ever hit the United States and is tied as the strongest hurricane to ever hit Louisiana.

Eaux owns property in Lake Charles which was damaged by the hurricane. Defendant Scottsdale Insurance Company (Scottsdale") issued a policy that covered hurricane-related wind damage which was in full force and effect on the day of Hurricane Laura's devastation. The policy limit for the property damage is $2,000,000.[1]
The policy paid replacement cost value if and when repairs were completed. The policy provisions states, in pertinent part, as follows:

---

[1] Doc. 1, ¶ 3.

Replacement Cost

a.  Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of the Coverage Form . . . .

d.  We will not pay on a replacement cost basis for any loss or damage:
      (1) Until the lost or damaged property is actually repaired or replaced;[2]

Policies written on a replacement cost coverage basis, pay the depreciated lost (the actual cash value) unless or until the repairs are made. On September 15, 2020, Eaux's public adjuster, Skyline Adjusters, submitted to Scottsdale its estimate of damages ("Skyline Estimate").[3]

The Skyline Estimate stated a "net claim – replacement cost value" of $1,934,689 and an additional $261,500 for a total building repair/replacement cost of $2,196,189.[4] Scottsdale submits that the Skyline Estimate did not provide an actual cost value ("ACV"). Eaux alleges that its total expenses were $2.8 million. Eaux denies that it failed to present and ACV, or that it was required to do so by law of policy.  Eaux's representative Jeffrey Major of Skyline Adjusting applied heavy depreciation to get funding for the repairs.[5]

Scottsdale asserts that the Skyline Estimate included pre-existing damage or other work not covered by Scottsdale's policy; Eaux disputes this. The property included

---

[2] Defendant's exhibit 3, p. 82, Doc. 40-6.
[3] Defendant's exhibit 16. Skyline pp. 20-234. Doc. 40-22; Defendant's exhibit 23, SIC 000556.
[4] Defendant's exhibit 16. Skyline pp. 20-234. Doc. 40-22; Defendant's exhibit 23, SIC 000556.
[5] Plaintiff's Exhibit 1, Affidavit of Jeffrey Major, ¶ ¶ 5, 6.

specialty components such as a government security tenant and uncommon exterior building components.[6]

Skyline reported the loss to Scottsdale on August 29, 2020 and requested a $250,000 advance to "assist with emergency services."[7] Scottsdale sent an adjuster to inspect the property on September 15, 2020. Scottsdale retained a building consultant to inspect the building. Scottsdale's consultant disputed the Skyline Estimate with regards to scope, cost and repair methodologies. Eaux disputes the consultant's value of the loss estimate.

Scottsdale submits that the major point of dispute involved the scope, repair methods and costs of the exterior wall cladding, window system and the roof,[8] whereas Eaux contends that Scottsdale grossly undervalued the estimated loss without cause.[9] On October 23, 2020, Scottsdale's building consultant provided its ACV damage estimate of $466,491.[10] Scottsdale made the following payments:

- September 23, 2020            $250,000 advance payment

- November 23, 2020            $218,193 payment of undisputed ACV

- January 8, 2021              $177,732 payment

- March 17, 2021              $ 29,440

- May 18, 2021               $1,120,726

---

[6] Defendant's exhibit 4, p. 12, ¶ 18; Defendant's exhibit 15, Skyline depo. p. 127:5-12, p. 128:1-6.
[7] Plaintiff's exhibit 1, ¶ 8.
[8] Defendant's exhibit 4, Fey Report, pp. 8-9; Defendant's exhibit 5, Granger Stuck Report, pp. 10-11.
[9] Plaintiff's exhibit 1, ¶ 9.
[10] Defendant's exhibit 4, Fey Report, p. 15, ¶ 23; Defendant's exhibit 22, p. 1; Defendant's exhibit 17, p. 1-2; Defendant's exhibit 24, p. 1-3.

Eaux does not dispute these payments but does dispute their purpose.[11]

In September 2020, Eaux began working with Encore, Inc. to serve as a general contractor to repair the property; on September 30, 2020, Eaux issued notice of its intent to retain Encore.[12] From September through November, 2020, Encore continued with substantial pre-construction work to include finalizing design decisions and engaging subcontractors. Scottsdale submits that under Louisiana's licensing law for contractors, Encore could not legally contract or perform work until it received a Louisiana contractor's license on November 19, 2020.[13] Encore was given notice on November 24, 2020, to proceed and commenced work on the project.[14] On December 20, 2020, Eaux and Encore entered into a written contract to repair the building for the sum of $1,360,000.[15]

Encore's contract contained the following payment obligations:

**3.2 Payment**
Owner shall pay Contractor an initial payment in the amount of $100,000.00 within 7 days after execution of this Contract

**3.2.1 Progress Payment**
A Progress Payment of $250,000 will be made by Owner to Contractor thirty days after the initial payment is due

**3.2.2 Final Payment**
Final payment which is the contract Sum plus any change orders and less the initial payment and less the Progress Payment subject to withholdings permitted hereunder shall be due within thirty 30 days of the last of the following to occur

.1 Final written approval of work performed has been provided by Owners

---

[11] Plaintiff's exhibit 1, ¶ 14.
[12] Defendant's exhibit 19.
[13] Defendant's exhibit 8, Encore Depo. part 1, p. 90, 95, part 2, p. 14; Defendant's exhibit 9, part 1, p. 62, 81.
[14] Defendant's exhibit 8, Encore Depo., p. 3, 98; Defendant's exhibit 10, Encore Contract, p. 3.
[15] Id.

> .2 Contractor has fulfilled the requirements of section 12 2 of this Contract
> .3 Contractor has provided Owner with any and all written manufacturer warranties
> .4 Owner has received total payments for depreciation held by the insurance company.

By November 24, 2020 Scottsdale paid a total of $468,193.[16] Scottsdale asserts that Eaux met its contract obligation to pay Encore the initial and progress payments as required by the contract but has not paid the full contract amount.

Eaux maintains that Scottsdale failed to pay the amount reflected in the proof of loss within thirty or sixty days, and that the $250,000 payment was the only payment that was timely.

### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

---

[16] $250,000 advance plus $218,192.53 payment.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

Scottsdale maintains that it made all payments timely, whereas Eaux maintains that only the $250,000 advance payment was timely, and all other payments were untimely potentially subjecting Scottsdale to statutory penalties and attorney fees.  The dispute centers around what is satisfactory proof of loss and when was it made available to

Scottsdale.  As detailed hereinabove, the parties strongly dispute both of these issues. As such, there is a genuine issue of fact for trial as to whether or not Scottsdale will be subject to bad faith penalties and attorney fees pursuant to Louisiana Revised Statutes 22:1892 and 1973.

## **CONCLUSION**

For the reasons set forth above, the Motion for Partial Dismiss of Eaux's bad faith claims will be denied.

**THUS DONE AND SIGNED** in Chambers on this 4th day of October, 2021.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**