UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| EAUX HOLDINGS, LLC | CIVIL CASE NO. 2:20-CV-01582<br>*Jury Trial* |
| VERSUS | |
| | JUDGE JAMES CAIN |
| SCOTTSDALE INSURANCE CO. | MAG. JUDGE KATHLEEN KAY |

# REVISED PRETRIAL STATEMENT

NOW INTO COURT, through undersigned counsel, comes Scottsdale Insurance Company ("SIC"), who submits the following revised Pretrial Statement to the Court and opposing Counsel. This Pretrial Statement is modified to retract and delete one of the stipulations stated in the original Pretrial Statement. No other changes were made.

1. **Jurisdiction (cite statutory basis):**

Jurisdiction is proper pursuant to 28 USC 1332.

2. **Pending Motions**:

The following motions are pending:

- R.Doc. 35 – SIC's Motion for Partial Summary Judgment on Plaintiff's Misrepresentations
- R.Doc. 38 – SIC's Motion to Compel
- R.Doc. 39 – SIC's Motion for Partial Summary Judgment on La. R.S. 22:1973 Claim for Actual Damages
- R.Doc. 41 – SIC's Motion for Partial Summary Judgment on Payments
- R.Doc. 42 – SIC's Omnibus Motion in Limine
- R.Doc. 44 – Plaintiff's Motion in Limine to Exclude Financial Information
- R.Doc. 45 – Plaintiff's Motion to Exclude Potions of Defendant's Expert Witness Granger Stuck
- R.Doc. 91 – SIC's Motion in Limine to Exclude Late Expert Reports, Supplemental *Daubert* Motion

3. **Brief Summary of Case:**

This is a Hurricane Laura claim. Plaintiff, Eaux Holdings, held an insurance policy issued by Scottsdale Insurance Company (SIC), bearing policy number CPS 3344220 (the "Policy") with a $2,000,000 policy limit. The Policy is a replacement cost policy (RCV), whereby plaintiff only became entitled to full payment of replacement cost value *if and when* the repairs are completed. Before then, the insured was only entitled to recover actual cash value (ACV) plus reasonable mitigation costs. The building was constructed in 1976 and had a high depreciation (low ACV). The property damage claim was complex, involving specialty components such as a government security tenant and uncommon exterior building components.

The day after the hurricane, plaintiff hired a public adjuster (PA), Skyline Adjusters. Skyline submitted, in an 800+ page, 4-volume set, a "damage estimate" solely based on RCV, even though ACV was the proper measure of the loss before repairs were completed. The inflated estimate exceeded the policy limits, and ultimately exceeded the actual cost to repair the property by approximately $1 million. The estimate also included pre-existing damage and non-covered losses. By way of example, the Skyline "estimate" included a "contingency" amount of $261,500; upgrades to the roofing; and overhead and profit calculated in excess of 46%. Skyline also represented to SIC that this 40+ year old building was well maintained despite having information to the contrary.

Louisiana law recognizes an insurer's right to "fully apprise" itself of the claim, especially in a large loss claim where it takes time for the building consultant hired to inspect and evaluate the loss to prepare a report, and for the insurer to review the estimates and determine the undisputed amount. SIC exercised this right (and duty) and retained a construction consultant (Grecco) who had experience with the specialty construction involved. Grecco disputed the Skyline estimate with regards to scope, repair methods and cost, and provided SIC with both an ACV and RCV. SIC timely issued payment based on the undisputed ACV and continued to adjust the claim on the disputed issues.

SIC issued the following payments: on September 23, 2020, SIC tendered an advance payment of $250,000; on November 23, 2020, SIC tendered $218,193, the remainder of the undisputed ACV; on January 8, 2021, SIC tendered $177,732; on March 17, 2021, SIC tendered $29,440; and on May 18, 2021, SIC tendered final payment of $1,120,726. To-date SIC has tendered nearly $1.8 million, which exceeds the RCV owed under the policy.

Despite that it was a large loss claim with substantial questions about scope and price and RCV was not due given repairs were not underway, plaintiff's PA was asserting undue pressure on SIC during the claim adjusting process to pay policy limits in the form of threats of legal ramifications. Aside from the fact that a PA is legally prohibited under

state law from rendering advice on legal issues,[1] this undue pressure included misrepresentations that the construction process was being delayed by SIC, when in fact plaintiff's chosen contractor was not licensed in Louisiana and could not begin work on the project. Construction commenced shortly after plaintiff's contractor received its license, and any alleged delay in construction was not caused by SIC, but instead caused by the contractor's inability to legally perform work until it became licensed. The PA's statements also included misrepresentations regarding the condition of the building.

Two weeks after SIC tendered the undisputed ACV, plaintiff filed suit, seeking damages and penalties under La. R.S. 22:1892 and 1973. Plaintiff alleges that the PA's damage estimate constituted "satisfactory proof of loss," and that SIC's failure to pay full policy limits based on that estimate constitutes "bad faith." Plaintiff's entire theory ignores the policy provisions, which states that plaintiff was only entitled to full RCV after repairs were complete, as well as Louisiana law that recognizes an insurer's right and duty to investigate complex, large loss claims, especially where a reasonable dispute exists as to scope and costs. Here, SIC timely investigated the claim, hired competent building consultants to value the loss, and paid the undisputed ACV timely. To-date, SIC paid more than the RCV, even before work was complete.

Since this claim has been submitted: (1) plaintiff secured a long-term 15 year+ lease renewal from its first floor tenant, which is admittedly considered "gold in the rental industry;" (2) plaintiff is actively in negotiations to lease the second floor which was unoccupied before the hurricane; (3) plaintiff was able to meet its payment obligations to its contractor; (4) the building value has increased over $660,000; and (5) plaintiff was paid nearly $1.8 million for the loss even before work was completed. Plaintiff has paid out less than what it has been paid for remediation and mitigation work. SIC's claim adjustment process was proper and timely, and plaintiff has not suffered any damages.

SIC timely and properly met its obligations to investigate the claim and pay the amounts owed under the policy. SIC's good faith dispute of plaintiff's inflated claim precludes a finding of breach of contract or bad faith. In addition, plaintiff's continued material misrepresentations void the Policy, and prohibits plaintiff from seeking further recovery.

**4.   Issues of Fact:**

One day after Hurricane Laura made landfall, plaintiff hired a PA (Skyline) who notified SIC of the loss on August 29, 2020. SIC promptly responded and retained an independent adjuster to inspect the damage. The loss was complex, and because of the specialty nature of the construction, the adjuster recommended a specialty construction consultant be retained. SIC hired a construction consultant (Grecco) with expertise in complex construction involving governmental tenants.

---

[1] See R.Doc. 34, SIC's Motion in Limine to Exclude Jeffrey Major as Expert Witness and Limit Jeffrey Major's Testimony as Fact Witness.

At SIC's first inspection, Skyline provided a damage estimate, which only included RCV, despite the fact that plaintiff would only be entitled to ACV until the repairs were completed. The Skyline estimate was inflated, included pre-existing damages and non-covered items of work. Instead of following industry standard to provide ACV, Skyline admitted its goal in preparing the estimate was to show that the policy limits would be exceeded. In addition, Skyline represented that the building was in good condition; it was later discovered that the building had significant pre-exiting damage.

At plaintiff's request, SIC issued a $250,000 advance payment on September 23, 2020. SIC's consultant conducted an inspection on September 27, 2020. Two weeks after the inspection, but before the consultant's report was issued, Skyline began making demands for payment of the full Skyline estimate. While Skyline asserted that "lack of funds" was delaying the project, in reality, plaintiff's selected contractor was not licensed in Louisiana and could not have started any work on the project, including pricing, bidding, hiring subcontractors, etc.

SIC's consultant (Grecco) issued its report, disputing the Skyline Estimate with regard to scope, cost and repair methodologies. Based on the consultant's report, SIC paid the undisputed ACV on November 23, 2020. SIC advised plaintiff it would continue to adjust the claim to reach agreement on the disputed issues.

Plaintiff's contractor, Encore, received its contractor's license on November 19, 2020. Encore began construction on November 24, 2020. Plaintiff and Encore formally entered into a written, signed contract on December 20, 2020. Under the contract between plaintiff and Encore, plaintiff was only required to pay one initial and one progress payment, totaling $350,000; the remaining contract sum was not due until the work was complete and plaintiff received the total insurance payment. By the time the initial and progress payments were due, SIC had tendered $645,925, which was sufficient to pay the contractually required sums.

In addition, the Encore contract included work that was not caused by the hurricane and/or covered under the SIC policy (such as repairs of pre-existing damage, water mitigation related to Hurricane Delta, upgrades such as betterment in insulation and over $100,000 in re-design and replacement of part of the HVAC system). Neither Encore nor plaintiff formally tracked items not covered by the policy during construction.

After suit was filed, SIC continued to communicate with plaintiff to reconcile the differences in the scope and pricing to reach a resolution on the value of the disputed portions of the claim. To that end, SIC retained a separate consultant (Granger Stuck of J.S. Held) to independently evaluate the loss and review the Skyline estimate. SIC paid additional amounts, because repairs were being completed, based on Held's determined RCV as well as the mitigation costs. To-date SIC has paid a total of $1,796,091, which

fully satisfies the amount owed under the policy, and in fact, actually exceeds the amount owed.

5.  **Issues of Law:**

In addition to the issues of law outlined below, SIC adopts any and all issues of law inherent in the pending summary judgment motions, motions in limine and *Daubert* motions outlined in Section (2), as well as any other dispositive motion filed by SIC, including the issues specified in the Court's associated rulings.

- **Claims Made by Plaintiff**

Plaintiff brings the following causes of action: (1) breach of contract; (2) bad faith penalties under La. R.S. 22:1892; (3) bad faith penalties under La. R.S. 22:1973; (4) damages under La. R.S. 22:1973.

While plaintiff has not provided SIC with an itemization of costs, in discovery, plaintiff alleges that it is entitled to the following amounts under the Policy:

(1) $2,196,188.79 – Skyline Estimate. Despite the fact that the cost of the work is now known, plaintiff continues to assert that it is entitled to the full amount of the Skyline Estimate. This position is contrary to the policy, which provides that replacement costs are owed after the work is complete, and only the incurred cost to repair the property. Further, plaintiff takes inconsistent positions regarding this claim. Plaintiff admitted in pleadings that the Skyline estimate is now "irrelevant" because it was only an estimate, and acknowledges that the claim must be based on the actual repair/replacement costs. R.Doc. 50-1, p. 7. In other pleadings, plaintiff continues to make meritless arguments that the Skyline estimate, prepared before any work commenced, much less was completed, represents the RCV owed under the policy. Even Skyline has acknowledged that the claim must be based on actual cost to repair. Given plaintiff's admission that the Skyline estimate is irrelevant because the claim is based on replacement cost, plaintiff should be estopped from arguing that it is entitled to the Skyline estimate. *Averette v. Transocean Enterprises, Inc.*, No. CIV.A. 6:07-1557, 2010 WL 2814702, at *3 (W.D. La. July 16, 2010).

(2) $491,141.79 – All Clear mitigation invoice. It is undisputed that this invoice is inflated and excessive, and that the work was incompetent. Plaintiff disputed this invoice. On October 11, 2021, SIC discovered, through a subpoena to the mitigation company, that plaintiff settled with All Clear for a discounted amount. As such, plaintiff is not entitled to the full inflated

5

> mitigation invoice.[2] In any event, SIC maintains that the obligation, if any, was extinguished by payment, settlement, satisfaction or otherwise.

(3)     $ 289,545 – Poole Roofing Quote. This is merely an estimate, and plaintiff admitted that this work was not performed, and it has not incurred this cost.

(4)     $9,560 – Electrical Invoice. For some unexplained reason, plaintiff did not pay this invoice. It is unclear if this work was actually performed.

The entire basis of plaintiff's claim is that the Skyline estimate constituted "satisfactory proof of loss." According to plaintiff, SIC had no reasonable basis to dispute the scope and cost of the loss as defined in the Skyline estimate, even though it raised several "red flags," to include, no ACV was provided, it was not limited to covered hurricane losses, and as shown by SIC's expert, Granger Stuck, it contained inflated scopes of work that were never performed.

As shown by SIC's expert, Louis Fey, SIC's claims handling process went "by the book" for this complex, large loss; SIC employed the proper qualified experts as necessary; SIC's use of experts and reliance upon their opinions was reasonable and in accordance with insurance industry standard practice; SIC had legitimate reasons to investigate the inflated claim submission; and SIC paid the undisputed amounts timely.

- **Breach of Contract**

Plaintiff has the burden of proof at trial to prove the reasonable actual mitigation and repair work scope and cost, which requires expert testimony.[3] Plaintiff has not provided an itemized list of these costs or expert evidence to support them.

Per the insurance policy provisions, SIC initially tendered the undisputed ACV of the loss. Once repairs were made, and replacement cost was known, SIC tendered RCV of the repairs. No breach of contract claim exists. Lastly, as shown by SIC's expert, Granger Stuck, no additional indemnity payments are owed under the policy. SIC's payments ($1,796,091) exceeded the total RCV of the repairs to the property ($1,780,089).

- **Legal Issues Under Both 1892 and 1973**
  - **Threshold legal issue of satisfactory proof of loss**

As a threshold issue, the insured who claims penalties under La. R.S. 22:1892 or 1973 "has the burden of proving that the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause."[4] In determining what constitutes "satisfactory proof of loss" sufficient to trigger

---

[2] SIC reserves the right to assess the impact of this newly discovered information, i.e., the newly produced settlement agreement between plaintiff and All Clear.
[3] *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 736 (5th Cir. 2010).
[4] *Reed v. State Farm Mutual Auto. Ins. Co.,* 2003-0107 (La. 10/21/03), 857 So.2d 1012, 1020; *Maloney Cinque, LLC v. Pacific Ins. Co., Ltd*., 2011-0787 (La. App. 4 Cir. 1/25/12), 89 So.3d 12, 21.

the statutory penalty periods, courts have defined it as: "that which is sufficient to fully apprise the insurer of the insured's claim."[5]

Plaintiff asserts that the Skyline Estimate, which was inflated, included non-covered items, and was improperly based on RCV only, constituted satisfactory proof of loss under Louisiana law. Louisiana courts have rejected this very position. In fact, courts routinely recognize that an insurer has the right (and duty) to review damage estimates to verify the scope and cost of the work, especially om large and/or complex property damage claims such as this one.[6] Where, as here, an insurer investigates the claim and has a reasonable disagreement regarding the scope and cost of the loss, the insured's claimed repair cost estimate on a property loss claim does not constitute "satisfactory proof of loss" under the law, and the statutory delay period does not commence upon receipt of the damage estimate.[7]

SIC had a reasonable basis to dispute the Skyline estimate, which did not follow industry standard or the policy to provide ACV. Admittedly, Skyline's goal in preparing the estimate was to attempt to show that the policy limits would be exceeded. At a minimum, ACV was necessary for SIC to determine the amount to be paid because RCV was not owed until the repair work was completed. Further, SIC's consultant disputed the Skyline estimate with regard to scope, cost and repair methodologies. The three major points of dispute were: (1) the widely varying roof replacement costs; (2) the scope of work to repair or replace the exterior wall cladding; and (3) the scope of work to repair or replace the windows. The cost of these three items varied greatly and accounted for much of the difference (approximately $600,000) between Skyline and the SIC consultant's estimates. While plaintiff asserts that SIC was in bad faith for investigating these disputes, almost a year after the hurricane, plaintiff's contractor was still in the process of determining the repair scope and method for the window replacement.

Because the Skyline estimate was insufficient to fully apprise SIC of the information necessary to value the claim, it cannot constitute satisfactory proof of loss under Louisiana law.

- o **Arbitrary, Capricious and Without Probable Cause**

Both La. R.S. 22:1892 and La. R.S. 22:1973 require proof that the insurer was "arbitrary, capricious, or without probable cause," a phrase that is synonymous with "vexatious."[8] The "vexatious refusal to pay" means unjustified, without reasonable or

---

[5] (Emphasis in original0 *Id.* at 22; *Louisiana Bag Co., Inc. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08), 999 So.2d 1104, 1119; *Reed* at 1022.
[6] *Reed v. State Farm Mutual Auto. Ins. Co.,* 2003-0107 (La. 10/21/03), 857 So.2d 1012, 1020; *Maloney Cinque, LLC v. Pacific Ins. Co., Ltd.*, 2011-0787 (La. App. 4 Cir. 1/25/12), 89 So.3d 12, 21; *Louisiana Bag Co., Inc. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08), 999 So.2d 1104, 1119.
[7] *Maloney Cinque, LLC v. Pacific Ins. Co., Ltd.*, 2011-0787 (La. App. 4 Cir. 1/25/12), 89 So.3d 12.
[8] *Reed v. State Farm Mut. Auto. Ins. Co.*, 2003-0107 (La. 10/21/03), 857 So. 2d 1012, 1021; *Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250, 1253 (La. 1993).

probable cause or excuse.[9] Both phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense.[10] When there are substantial, reasonable, and legitimate disputes as to the extent of an insurer's liability or an insured's loss, the insurer's failure to pay within the statutory period is not arbitrary, capricious, or without probable cause.[11] Thus, statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense.[12] This is especially true where there is a reasonable and legitimate question as to the extent and causation of a claim; bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist.[13]

As discussed above, reasonable and legitimate questions existed regarding the claim, including the scope, repair method and cost. The Skyline estimate contained contingency amounts, work to repair pre-existing damage, work that was never performed, inflated costs, and other potentially non-covered items of work. Further, plaintiff's total claim value was close to $2.9 million, well over the policy limit, on a building valued at $2 million; while the inspections showed the building was generally in good condition structurally. Plaintiff's other misrepresentations, including pre-existing damages and betterment, raised red flags that resulted in legitimate inquiry as to the value of the loss. These legitimate disputes preclude a finding of bad faith.

- o **Incurred Costs**

Throughout this litigation, plaintiff incorrectly argues that it is entitled to full payments of estimates and invoices, claiming these are "incurred" costs. Plaintiff incorrectly asserts that a roofing *estimate* for $289,545, which was never accepted or paid, was an "incurred cost." Plaintiff also incorrectly asserts that the $491,141.79 All Clear mitigation invoice, which was disputed by all as unreasonable and never paid in full, was an "incurred cost."

The Louisiana Supreme Court addressed the legal definition of an incurred cost in *Hoffman v. Travelers Indem. Co. of America*, 2013-1575 (La. 5/7/14), 144 So.3d 993, wherein plaintiff attempted to recover from her insurer the full amount billed by her medical provider for services actually rendered, despite that the charges were discounted. Plaintiff paid the discounted amount and sought reimbursement from her insurer for the non-discounted amount. The issue before the Court was whether plaintiff had effectively "incurred" the billed amount or the discounted amount.

---

[9] *Reed*, 857 So. 2d at 1021; *Louisiana Maintenance Services, Inc.*, 616 So.2d at 1253.
[10] *Sher v. Lafayette Ins. Co.*, 07-2441 (La. 4/8/08), 988 So.2d 186, 206-207.
[11] *Louisiana Bag Co., Inc.*, 999 So.2d at 1114.
[12] *Reed*, 857 So.2d 1012, 1021.
[13] *Reed*, 857 So.2d at 1021; *Louisiana Bag Co., Inc.*, 999 So.2d at 1114.

8

The Court defined an incurred expense as one actually paid or that plaintiff has become legally obligated to pay; and held that plaintiff had incurred the lesser, discounted amount that the provider accepted as full payment for its services. *Hoffman* at 998, 1001. Further, the jurisprudence is clear that under Louisiana insurance law, "an insured may not recover in excess of his actual loss." *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 521 (5th Cir. 2010).

Applying *Hoffman* and *Bradley* to the subject case, Plaintiff cannot claim the roof estimate for work never performed as an incurred cost. Additionally, Plaintiff did not pay the full amount of the grossly inflated and unreasonable mitigation invoice, and cannot recover the amount billed. Plaintiff's argument would result in a windfall, allowing the insured to profit from the policy rather than be indemnified for the loss. Such a result is not sanctioned under Louisiana law.

- **Damages and Penalties under 1892**

Under La. R.S. 22:1892, "all insurers ... shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured." If the insurer fails to comply, it is subject to penalties if its conduct is found to be "arbitrary, capricious, or without probably cause."

As discussed above, plaintiff's assertion that the Skyline estimate constituted satisfactory proof of loss is legally incorrect. Further, SIC had legitimate disputes regarding the scope, repair methods and costs of the repairs. SIC exercised its right through the insurance claim adjusting process to investigate and validate plaintiff's claimed losses to ensure accurate payments. If SIC had paid the amount improperly demanded by plaintiff's non-lawyer public adjuster, it would have overpaid the claim. At all times, SIC handled plaintiff's claim in good faith. Plaintiff's claims for bad faith penalties are just another attempt to overvalue and inflate its loss.

- **Damages and penalties under 1973**

La. R.S. 22:1973 provides, in pertinent part:

> A. An insurer ... owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
>
> B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section:

9

(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater.

- o **Actual damages under 1973(A)**

Plaintiff seeks actual damages under La. R.S. 22:1973(A). The Louisiana Supreme court interpreted the language in 1973 and held that only way to consistently read the language of the statute was to find that the "damages sustained" referred to damages "sustained by the breach" of the statute, i.e. actual or consequential damages the insured incurred because of the breach. *Durio v. Horace Mann Insurance Company*, 2011-0084 (La. 10/25/11); 74 So.3d 1159.

To justify an award of damages under La. R.S. 22:1973, the insured must adduce sufficient proof—including causation—of the damages alleged. *French v. Allstate Indem. Co.,* 637 F.3d 571, 584 (5th Cir.2011). See also *Consol. Co. v. Lexington Ins. Co*., 616 F.3d 422, 434 (5th Cir.2010).

Plaintiff alleges that construction of the building was delayed due to SIC's adjustment of the claim. The actual damages sought are damages associated with the alleged delay in commencement of construction, including alleged lost profits. As such, to prove entitlement to actual damages under 1973(A), plaintiff must show that the alleged delay in commencement of construction was caused by SIC.

While plaintiff continuously attempts to confuse the issues by relying on alleged delayed payments by SIC, under well-settled law, plaintiff must prove that **SIC's alleged breach caused actual damages**, i.e., caused delay in construction.

Plaintiff cannot do so. Plaintiff's contractor was not licensed, and could not begin any work (including bids, pricing, etc.) until November 19, 2020. Work began on November 24, 2020. Therefore, any alleged delay in commencement of construction was caused by Encore's lack of a license and ability to legally perform work, and not by any actions of SIC.

Even further, while acknowledging unrelated factors that necessarily caused delay, plaintiff cannot quantify any sort of delay caused by any reason, much less caused by SIC. Plaintiff identified no construction delay expert. Its sole witness to testify as to the alleged

construction delay, Encore, admitted that it has performed no construction delay analysis, and is not qualified to do so.

In addition, plaintiff cannot prove any alleged actual damages. Plaintiff's purported expert to opine as to "lost profits" and "diminished property value" is not qualified, and is legally prohibited from offering such opinions. He is not a licensed appraiser. Further, Louisiana law is clear that any claim for lost profits "must be proven with reasonable certainty and cannot be based on conjecture and speculation." *Grand Acadian, Inc. v. Fluor Corp.*, No. 2:07 CV 295, 2010 WL 1053701, at *2 (W.D. La. Mar. 22, 2010). The entire basis of the purported expert's conclusions is grounded in improper facts and speculation.

Lastly, even if plaintiff could prove "actual damages," plaintiff failed to mitigate its damages. Even though the second floor of the building was vacant prior to the hurricane, plaintiff made the decision to only entertain potential "long term" leases of the second floor after the hurricane, preventing the second floor from occupancy for governmental tenants interested in 15-24 month lease terms.

- o **Breach of duty under 1973(B)**

La. R.S. 22:1973(B) provides:
> B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section:
> (1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
> (2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
> (3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
> (4) Misleading a claimant as to the applicable prescriptive period.
> (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
> (6) Failing to pay claims pursuant to R.S. 22:1893 when such failure is arbitrary, capricious, or without probable cause.

Plaintiff's unsupported allegations implicate La. R.S. 22:1973(b)(5), which requires proof of failure to pay a claim within 60 days of satisfactory proof of loss when such failure is arbitrary, capricious and without probable cause.

11

Plaintiff cannot show that SIC failed to pay any undisputed amounts within 60 days from "satisfactory proof of loss," as required to prove a breach under La. R.S. 22:1973. As discussed above, the Skyline estimate does not constitute satisfactory proof of loss under Louisiana law. Given plaintiff's inflated claim, SIC was entitled to rely upon its building expert's advice before agreeing to an undisputed amount of loss. Within 30 days of SIC receiving its building expert's estimate, it paid the undisputed amount of the ACV. Under the policy, depreciation is withheld until the actual repairs are completed, and the actual costs documented.  As such, RCV was not recoverable until the work was completed.

- **Penalties under 1973(C)**

La. R.S. §22:1973(C) provides, in pertinent part, the following:

C.  In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer **in an amount not to exceed two times the damages sustained** or five thousand dollars, whichever is greater.  (Emphasis added).

The Louisiana Supreme Court interpreted this language in *Durio v. Horace Mann Insurance Company*, 2011-0084 (La. 10/25/11), 74 So.3d 1159. Specifically, the court assessed §1973 in its entirety and found that the only way to consistently read the language of the statute was to find that the "damages sustained" referred to damages "sustained by the breach" of the statute, i.e. actual or consequential damages the insured incurred because of the breach.

The court also compared the language of §1973, which allows penalties up to "two times the damages sustained…," with the language of La. R.S. 22:1892, which allows penalties at fifty percent damages "on the amount found to be due from the insurer to the insured." The court reasoned: "Had the legislature intended that [La. R.S. 22:1973] penalties be calculated based on the amount due under the contract, it would have easily and clearly stated so in the statute, as it did in [La. R.S. 22:1892]." 2011-0084, pp. 17-18 (La. 10/25/11), 74 So.3d at 1170. As such, if damages as a result of the breach are proven and awarded, the trial court may, in its discretion, also award a penalty of up to twice the amount (200%) of those damages.

Conversely, an award of penalties under La. R.S. 22:1973 must be limited to the discretionary award of $5,000 where an insured offers no proof that it sustained actual damages.[14] Therefore, even if a breach is found, which is denied by SIC, any penalties under 1973 would be limited to $5,000, given that plaintiff cannot show entitlement to actual damages.

---

[14] *Audubon Orthopedic & Sports Med., APMC v. Lafayette Ins. Co*., 2009-0007 (La. App. 4 Cir. 4/21/10), 38 So. 3d 963, 973, writ denied, 2010-1153 (La. 10/8/10), 46 So. 3d 1266, and writ denied, 2010-1155 (La. 10/8/10), 46 So. 3d 1266.

12

- **Plaintiff's Misrepresentations Void Coverage**

The Policy provides the following, hereinafter referred to as the "Misrepresentation Provision":

**A.   CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

    **1.**    This Coverage Part;
    **2.**    The Covered Property;
    **3.**    Your interest in the Covered Property; or
    **4.**    A claim under this Coverage Part.

"[T]he ordinary duty of good faith and fair dealing between an insurer and an insured is reciprocal."[15] In other words, where an insured conceals or misrepresents material information to the insurer, the insured's "reverse bad faith" directly impedes the insurer's ability to property evaluate, assess, and handle its claim such that the policy is void and the insurer owes no further obligation.

Through its representatives, Joey Odom and Skyline, plaintiff made and continues to make numerous independent material misrepresentations with regard to its claims for coverage under the Policy and statutory penalties. Specifically, plaintiff's misrepresentations include (1) the suggestion that building repair delays were solely attributable to a lack of funds received from SIC such that SIC is liable for "actual damages" under La. R.S. 22:1973 when, in truth, any delay was the result of factors not attributable to SIC; (2) plaintiff's ongoing attempts to obtain policy proceeds for improvements to the property that are not covered by the Policy; and (3) misrepresentations of the building's condition. These misrepresentations trigger the Misrepresentation Provision, voiding the Policy and all claims against SIC.

- **Plaintiff's Public Adjuster Violated Louisiana Law and Did Not Follow the Policy**

La. R.S. 22:1691, *et seq*, governs the duties and restrictions applicable to public adjusters. La. R.S. 22:1691 expressly states the purpose of the law regarding public adjusters and, "specifies the duties of and restrictions on public adjusters, …limiting their

---

[15] *Lamar Advert. Co. v. Zurich Am. Ins. Co.,* 2021 WL 1345708, at *14 (M.D. La. Apr. 12, 2021) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cable*, 68 F.3d 905, 910-11 (5th Cir. 1995)).

13

licensure to …first-party claims in a manner which avoids the unauthorized practice of law." Under La. R.S. 22:1692, public adjusting is defined only as "investigation, appraising, evaluating and reporting to the insured." It expressly excludes activity which may constitute the unauthorized practice of law. Further, La. R.S. 22:1706(H)(7) prohibits a public adjuster from rendering legal advice regarding the policy provisions or coverage issues.

Plaintiff's public adjuster, Jeffrey Major (Skyline), violated (and continues to violate) state law prohibitions on the actions of a public adjuster. Major incorrectly referred to his damage estimate as the legal terms "satisfactory proof of loss;" he made assertions of legal obligations owed by SIC; and he demanded payment based on his flawed interpretations of the law and the policy. His incorrect "legal assertions" implied that SIC had no right to evaluate the large loss claim. These actions, and others, violate Louisiana's strict limitation on a public adjuster's actions in this state. Major continued his illegal actions throughout the claim adjustment period, tainting the entire process. Any testimony or documentary evidence in which Major violates state law should be excluded at trial. See *Maloney Cinque, L.L.C. v. Pacific Ins. Co., Ltd.*, 89 So.3d 22 (La.App. 4 Cir. 1/25/12); *Louisiana State Bar Ass'n v. Carr & Assocs., Inc.*, 2008-2114 (La. App. 1 Cir. 5/8/09), 15 So. 3d 158, 162 (citing La. R.S. 22:1691)(finding that an insurance adjuster negotiating for payment to clients was engaged in the unauthorized practice of law).

Lastly, Major's "damage estimate" did not provide AVC, which violated industry standards and the policy. *See Maloney Cinque, L.L.C. v. Pacific Ins. Co., Ltd.*, 89 So.3d 12 (La.App. 4 Cir. 1/25/12) (testimony of public adjuster partially excluded because he admitted he did not follow the terms of the policy).

- **The total amount tendered by SIC cannot be used to support a claim for bad faith**

Plaintiff intends to argue that SIC's post-suit tenders evidence some sort of bad faith on behalf of SIC. This argument is flawed and is contrary to Louisiana law. At the outset, under the policy, plaintiff was only entitled to actual cash value of the building until repairs were completed. SIC tendered the undisputed ACV before repairs began. Once repairs were underway, SIC tendered the RCV. As such, plaintiff improperly compares the payment of the claim based on RCV with the initial undisputed ACV amount. Tenders occurring after repairs to the building, in accordance with the policy, do not evidence bad faith.

Further, the Louisiana Supreme Court held that an insurer's subsequent tenders are immaterial were there are disputes in the claim investigation. Specifically, the Court held that an insurer's "handling of the file cannot be evaluated by hindsight." *Reed v. State Farm Mutual Auto. Ins. Co.*, 2003-0107 (La. 10/21/03), 857 So.2d 1012 (holding that an insurer's

liability is based on "facts known to the insurer at the time of its action," and "the fact that [the insurer] subsequently tendered the full [policy] limits is immaterial.").

6.  **Lists of Witnesses:**  Please list all witnesses, except for impeachment witnesses; "will call" witnesses must be identified with particularity.  Include names, telephone numbers, addresses, and email addresses, if available.

- SIC representative;
- Adam Lock, SIC Claim Specialist;
- Granger Stuck;
- Stephen Duplantis;
- Louis Fey;
- Louis Collison;
- David Porterfield;
- Joey Odom;
- Evan Monheiser;
- Any witness needed to authenticate any exhibit offered at trial.

7.  **Exhibits:**  All exhibits should be made available to opposing counsel as soon as possible.  All objections to authenticity or admissibility must be made 14 days prior to trial.

- SIC Policy, SIC 212-320;
- SIC Activity Log, SIC 119-143;
- SIC Claim file, SIC 1-3711;
- Grecco Reports, SIC 565-706, SIC 2947-3088, SIC 2926-2937;
- Wardlaw report;
- JS Held Report;
- Skyline Estimate;
- Any document produced by plaintiff in discovery, bates labeled Eaux-Odom-FourO 1-284 and Pltf Supp 1-406, including:
    - Eaux-Odom-FourO 283;
    - Eaux-Odom-FourO 95;
    - Eaux-Odom-FourO 277.156
    - Eaux-Odom-FourO 266.042;
    - Eaux-Odom-FourO 267
    - Eaux-Odom-FourO 3
    - Eaux-Odom-FourO 8
    - Eaux-Odom-FourO 263.230
    - Eaux-Odom-FourO 265.218-265.220
    - Eaux-Odom-FourO 264

- - - Eaux-Odom-FourO 264.003-.004
    - Eaux-Odom-FourO 265.111
    - Eaux-Odom-FourO 265.84-87
    - Eaux-Odom-FourO 95-96.03
    - Eaux-Odom-FourO 87-88.02
    - Eaux-Odom-FourO 260.05
    - Eaux-Odom-FourO 10.83-85
    - Eaux-Odom-FourO 272.80
    - Pltf Supp 192;
    - Pltf Supp 420;
    - Pltf Supp 211;
    - Pltf Supp 156-187;
  - Any document received in response to subpoena issued to Encore, Inc., bates labeled Encore 1-364, to include:
    - Encore Contract, Encore 55;
    - Proposal, Encore 57;
    - BECI bid set plans, Encore 49;
    - Stamped final plans for exterior (BECI), Encore 50
    - Design Development for HVAC replacement, Encore 40;
    - Construction documents for HVAC replacement (Associated Design Group), Encore 43;
    - Daily Logs, Encore 11;
    - Change Orders, Encore 1-10;
    - Schedules, Encore 91-94;
    - Job Cost Reports, Encore 14-15, 95
    - Encore Invoices and payments, Encore 59-75;
    - All punchlists, including ENcoree76, 77;
    - Project correspondence, Encore 12;
    - All job progress meeting minutes, including Encore 12.296-301, 12.545-549, 12.554-606, 12.609-612, 12.709-715, 12.773-779, 12.798-805, 12.808-815, 12.854-858, 12.1165-1169, 12.897-902, 12.909-913, 12.923-929, 12.1002-1007, 12.1016-1025, 12.1029-1038, 12.1047-1053, 12.1066-1069, 12.1080-1089;
  - Letter from Louisiana Contractor's Board dated August 6, 2021, attached as Exhibit 2 to Encore deposition;
  - Any document received in response to subpoena issued to Skyline Adjusters, bates labeled Skyline-00001-00452, to include the following:
    - Skyline-00017-20
    - Skyline-00029;
    - Skyline-00004;

- - Skyline-00218;
  - Skyline-00242;
  - Skyline-00337;
  - Skyline-00265;
  - Skyline-00172;
  - Skyline-00029;
  - Skyline-00056;
- Any document received in response to subpoena issued to Associated Design Group, ADG 1-1812, including:
  - ADG 344
  - ADG 49;
  - ADG 106;
  - ADG 119;
- Any document received in response to subpoena issued to BECI, Inc., bates labeled BECI 1-574, including:
  - BECI 270;
  - BECI 312;
  - BECI 340;
  - BECI 205
  - BECI 207;
  - BECI 217.
- Any document received in response to subpoena issued to Bourgeois Electric;
- Any document received in response to subpoena issued to Coy Vincent, bates labeled Vincent 1-106;
- Any document received in response to subpoena issued to JWTC;
- Any document received in response to subpoena issued to Latter & Blum, Latter & Blum 1-902, including:
  - Latter & Blum 7;
  - Latter & Blum 160;
  - Latter & Blum 579;
  - Latter & Blum 824;
  - Latter & Blum 296;
  - Latter & Blum 213;
  - Latter & Blum 126;
- Any document received in response to subpoena issued to Russell Stutes;
- Any document received in response to subpoena issued to All Clear, including receipt and release between plaintiff and All Clear;
- Expert Report of Louis Fey and all attachments;
- Expert Reports of Stephen Duplantis and all attachments;

- Expert report of Granger Stuck/JS Held and attachments;
- Any depositions taken in this matter to which SIC does not object, and all exhibits thereto, including deposition of Joey Odom and 1442 deposition of Eaux Holdings and FourO;
- Any and all exhibits attached to any motion filed by any party, to which SIC does not object;
- Any item and/or exhibit relied upon or used by any expert retained in this matter to which SIC does not object;
- Any Curriculum Vitae regarding any expert witness presented on behalf of SIC to which SIC does not object;
- Any and all documents listed by plaintiff to which SIC does not object;
- Any demonstrative aid presented on behalf of SIC;
- Any pleading, discovery request and/or discovery response and all attachments thereto in this matter, to which SIC does not object, including plaintiff's Initial Disclosures and written discovery responses;
- Any documents that may be found through continued discovery which is presented on behalf of SIC or to which SIC does not object;
- Any documents needed for impeachment purposes, including deposition transcripts.
- SIC specifically reserves the right to object to any document (or portion of any document) produced in discovery that is irrelevant, improper or prejudicial to SIC.

**8.** **Depositions:** List all depositions which may be offered in whole or in part. If in part, specify the part which will be offered by page and line numbers. Opposing counsel shall make any objections 14 days prior to trial.

**9.** **Stipulations:** State or attach any stipulations already agreed upon by counsel.

- Plaintiff withdrew its mental anguish claim. R.Doc. 71, p. 5.

**10.** **Estimated Length of Trial**: 4 days.

11. Other Matters that Should be Made Known to the Court:

On October 11, 2021, plaintiff, in response to SIC's subpoena to All Clear, produced a settlement agreement between plaintiff and All Clear, which discounted the amount owed. We requested a legible copy and the supporting payment documents (ie, checks). SIC reserves the right, after review, to request additional information and to make appropriate pretrial arguments related to the agreement. Preliminarily, the agreement

releases plaintiff from liability for any additional amounts and purports to reserve All Clear's right to any additional amounts obtained from SIC. Thus, given that the obligation as to the plaintiff has been extinguished by payment, settlement, satisfaction or otherwise, plaintiff no longer has liability or an interest in any excess amounts over the settlement amount, and this issue is not proper for trial.

In addition, during the deposition of Eaux Holdings and FourO taken on September 15, 2021, "place holders" were attached as exhibits to the deposition for documents not produced by plaintiff. To-date, these documents have not been produced, nor has plaintiff indicated that the documents do not exist. SIC reserves the right to seek Court intervention for the failure to produce the following:

- Exhibit 2 – Documents regarding lease efforts on the second floor (texts, letters, letters of intent, emails, documents, or whatever relating to the lease of the second floor property)
- Exhibit 4 – Maintenance or repair records, including invoices and/or checks
- Exhibit 6 – Any evidence of payments made through the general account
- Exhibit 8 – Any evidence of deposits of checks from Scottsdale to Four O
- Exhibit 9 – All payments to contractors
- Exhibit 10 – Any evidence of payments or intent to make payments to All Clear
- Exhibit 18 – Documentation concerning communications with other contractors before December 20, 2020.

*[Signature block on following page]*

                        RESPECTFULLY SUBMITTED,

                        **KEOGH, COX & WILSON, LTD.**

BY:   /s/ Mary Anne Wolf
        JOHN P. WOLFF, III (Bar #14504)
        MARY ANNE WOLF (26556)
        VIRGINIA J. McLIN (31257
        JENNIFER R. DIETZ (33804)
        CHELSEA A. PAYNE (35952)
        SYDNEE D. MENOU (35913)
        701 Main Street (70802)
        Post Office Box 1151
        Baton Rouge, La 70821
        Telephone:  225-383-3796
        Facsimile:  225-343-9612
        Email: jwolff@keoghcox.com
              mwolf@keoghcox.com
              jmclin@keoghcox.com
              jdietz@keoghcox.com
              cpayne@keoghcox.com
              smenou@keoghcox.com
        *Counsel for Defendant, Scottsdale Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this **18th day of October, 2021,** a copy of the foregoing **Pretrial Statement** was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system to all counsel of record. I also certify that there are no known manual recipients.

                /s/ Mary Anne Wolf
                MARY ANNE WOLF