UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **EAUX HOLDINGS L L C** | **CASE NO.  2:20-CV-01582** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SCOTTSDALE INSURANCE CO** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is a "Motion for Partial Summary Judgment on La. R.S. 22:1973 Claim of Actual Damages" (Doc. 39) filed by Defendant Scottsdale Insurance Company ("Scottsdale"). In its motion, Scottsdale seeks partial summary judgment that (1) Plaintiff is not entitled to recover mental anguish damages; (2) Plaintiff cannot prove a causal link between alleged damages and Scottsdale's handling of the claim; (3) Plaintiff cannot show that Scottsdale failed to pay any undisputed amounts within 60 days as required by Louisiana Revised Statute 22:1973, and (4) Plaintiff cannot prove actual damages where it is undisputed that the building value increased significantly.

## FACTUAL STATEMENT

On August 27, 2020, Hurricane Laura made landfall in Cameron, Louisiana and struck Lake Charles, Louisiana as a Strong Category 4 hurricane; it was the fifth strongest hurricane to ever hit the United States and is tied as the strongest hurricane to ever hit Louisiana.

Eaux owns property in Lake Charles which was damaged by the hurricane. Defendant Scottsdale Insurance Company (Scottsdale") issued a policy that covered

hurricane-related wind damage which was in full force and effect on the day of Hurricane Laura's devastation. The policy limit for the property damage is $2,000,000.[1]

The policy paid replacement cost value if and when repairs were completed. The policy provisions states, in pertinent part, as follows:

**3.    Replacement Cost**

    **a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of the Coverage Form . . . .

***

    **c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

    **d.** We will not pay on a replacement cost basis for any loss or damage:
- **(1)** Until the lost or damaged property is actually repaired or replaced; and
- **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

***

    **e.** We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to **f.** below:
- **(1)** The Limit of Insurance applicable to the lost or damaged property;
- **(2)** The cost to replace the lost or damaged property with other property:

    **(a)** Of comparable material and quality; and

    **(b)** Used for the same purpose; or

---

[1] Doc. 1, ¶ 3.

> **(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.[2]
>
> \*\*\*
>
> **f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

On September 15, 2020, Plaintiff's Public Adjuster, Skyline Adjusters, issued an estimate to repair the building with a total building repair/replacement cost of $2,196,188.79.[3] Scottsdale asserts Eaux was only entitled to an actual cash value ("ACV") until repairs to the building were completed, and the estimate did not provide an ACV but was based on replacement cost.[4] Scottsdale issued a $250,000 advance payment on September 23, 2020.[5]

Scottsdale retained an expert building consultant who disputed the Skyline estimate with regard to scope, cost, and repair methodologies.[6] Eaux asserts that Scottsdale's building consultant grossly undervalued the loss and omitted several undisputed items from its estimate. On November 22, 2020, within 30 days of receiving its consultant's ACV estimate, Scottsdale issued payment for $218,193 for the undisputed ACV and advised Eaux it would continue to adjust the claim to reach agreement on the disputed issues.[7] Eaux disputes this and denies that Scottsdale continued to adjust the claim.

---

[2] Defendant's exhibit 2, Policy, SIC 00293, Doc. 41-6.
[3] Defendant's exhibit 14, Skyline 00020-234.
[4] Defendant's exhibit 3, SIC 293.
[5] Doc. 1.
[6] Defendant's exhibit 4, Louis Fey Expert Report.
[7] Defendant's exhibit 4, Fey Repor.

On September 30, 2020, Eaux issued a Notice of Intent to secure Encore's services as a general contractor on the project.[8] Because Encore was not licensed, and state law prohibited it from bidding, contracting, or performing construction work in the state, Encore was unable to begin construction until November 24, 2020. Eaux remarks that Encore could have started earlier had there been adequate funding.

Eaux and Encore executed a construction contract on December 20, 2020, for a total of $1.36 million.[9]

Under the Contract between Encore and Plaintiff, Section 3 governs payments to be made as follows:

> **SECTION 3 CONTRACT SUM**
> **3.1** Owner shall pay contractor for performance of the work subject to additions and deductions by change order or other Contract provisions the total sum of ($1,360,000.00).
> **3.2 Payment** Owner shall pay contractor an initial payment in the amount of $100,000.00 within seven 7 days after execution of this Contract.
> **3.2.1 Progress Payment** A Progress Payment of $250,000.00 will be made by Owner to Contractor thirty 30 days after the initial payment is due.
> **3.2.2 Final Payment** Final payment which is the Contract Sum plus any change orders and less the initial payment and less the Progress Payment subject to witholdings permitted hereunder shall be due within thirty 30 days of the last of the following to occur
>
>> .1 Final written approval of work performed has been provided by Owner
>> .2 Contractor has fulfilled the requirements of Section 12 2 of this Contract
>> .3 Contractor has provided Owner with any and all written manufacturer warranties

---

[8] Defendant's exhibit 15, Skyline 00265-001; Defendant's exhibit 8, Encore Deposition, Vo. I, p. 56.
[9] Defendant's exhibit 10, Encore Contract, Encore 55.

> .4 Owner has received total payments for depreciation held by the insurance company.[10]

Under the contract, Plaintiff was obligated to pay the initial $100,000 payment by December 27, 2020, and the $250,000 progress payment by January 27, 2021.[11] Plaintiff paid the $100,000 to Encore on December 29, 2020,[12] and the $250,000 Progress Payment on February 3, 2021.[13]

By November 24, 2020, Scottsdale paid a total of $468,192.53 to Plaintiff,[14] and on January 8, 2021, Scottsdale tendered a payment for $177,731.98 to Plaintiff.[15]

The project experienced the following delays:

- Between November 19, 2020, and December 20, 2020, delays were the result of (1) ceiling tile back ordered; (2) exterior weather resistant barriers back ordered; (3) weather/rain delays; (4) difficulty removing old panels on exterior; (5) inability to install weather resistant barriers due to temperature.[16]

- Plaintiff's decision to upgrade the HVAC system for the building; the Design Development documents for the HVAC upgrade were not issued until February 2021.[17]

- The Final construction plans were not issued until April 1, 2021.[18]

---

[10] *Id.*, 55.01-.02.
[11] *Id.*
[12] Defendant's exhibit 11, Encore 63.
[13] Defendant's exhibit 12, Encore 66.
[14] *Id.*
[15] Defendant's exhibit 4, Expert Report of Louis Fey.
[16] Defendant's exhibit 5, Expert report of Granger Stuck, p. 16.
[17] *Id.* p. 19.
[18] *Id.*

- Encore admitted that the design of the HVAC system was not completed as anticipated in the project schedule.[19]

- Change order submitted by Encore to Plaintiff adding 14 days to schedule.[20]

- In mid-February, 2021, a winter storm hit Lake Charles causing lost power, water, and internet to the building for several days as well as a 10 day delay for materials.[21]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State*

---

[19] Defendant's exhibit 6, 30(b)(6) Deposition of Encore, Vo. I, p. 186.
[20] Defendant's exhibit 13, Encore 00004; Defendant's exhibit 8, Encore depo. Vo. I, p. 162.
[21] Defendant's exhibit 9, Encore depo. Vol. II, p. 116-118.

*Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Scottsdale moves to dismiss Plaintiff's claims for actual damages under Louisiana Revised Statute 22:1973. Specifically, Scottsdale moves to dismiss Plaintiff's claim for mental anguish because Plaintiff is a limited liability company, and as such is not entitled to this type of damages. Plaintiff, through counsel agrees that a legal entity is not entitled to damages for mental anguish.[22] In addition, Scottsdale moves to dismiss any damages caused by delay in construction of the subject building, and/or for Plaintiff's claim for bad faith damages.

To create a genuine issue of material fact for trial, Plaintiff submits the Declarations of Jeffrey Major and Joey Odom, the sole member of Four-O, LLC. [23]

---

[22] Plaintiff's opposition, p. 5, Doc. 71.
[23] Plaintiffs exhibits 1 and 2, respectively.

Mr. Major declares that he presented Scottsdale's adjuster "proof of loss" on September 15, 2020, which detailed the scope and cost of repairs attributable to Hurricane Laura.[24] Mr. Major also declares that the $250,00 advance by Scottsdale was not sufficient for the mitigation costs incurred.[25] Mr. Major declares that there were numerous unexplainable discrepancies, errors, and omissions as to scope and price concerning Scottsdale's building consultant's October 23, 2020 estimate.[26] Mr. Major declared that the $250,000 advance payment for mitigation was inappropriately deducted because the consultant's estimate did not include mitigation.[27]

Mr. Major declares that the October 23, 2020 payment by Scottsdale was made 69 days after Plaintiff's "proof of loss" was presented to Scottsdale and 31 days after Scottsdale's estimate.[28] Mr. Major declares that Scottsdale has made the following payments:

- $250,000  Advance for emergency mitigation services
- $218,193  Undisputed ACV based on building consultant
- $177,732  Additional payment for emergency mitigation services
- $29,440   Debris removal
- $1,120,726 Actual undisputed RCV payment[29]

---

[24] *Id.* ¶ 3.
[25] *Id.* ¶ 8.
[26] *Id.* ¶ 9.
[27] *Id.* ¶ 10.
[28] *Id.* ¶ 11.
[29] *Id.* ¶ 14.

Mr. Odom declares that he had procured Russell Stutes Construction to begin work immediately but because of insufficient funds, the work could not begin.[30] Mr. Odom hired Encore who was not Licensed by the state of Louisiana, but it began work despite Scottdale's failure to make payments.[31] Mr. Odom also attests to the above-mentioned payments made by Scottsdale.[32] Mr. Odom declares that he has incurred over $2.2 Million in costs.[33]

The Court finds that there are genuine issues of material fact to be decided at trial as to Plaintiff's bad faith claims.

## CONCLUSION

For the reasons set forth above, the Court will grant Scottsdale's Motion for Partial Summary Judgment as to Plaintiff's claims for mental anguish; otherwise, the motion will be denied.

**THUS DONE AND SIGNED** in Chambers on this 17th day of February, 2022.

                        **JAMES D. CAIN, JR.**
                    **UNITED STATES DISTRICT JUDGE**

---

[30] Plaintiff's exhibit 2, ¶¶ 3–5.
[31] *Id.* ¶ 6.
[32] *Id.* ¶ 8.
[33] *Id.* ¶ 9.