UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **EAUX HOLDINGS L L C** | **CASE NO.  2:20-CV-01582** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SCOTTSDALE INSURANCE CO** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the Court is a "Motion for Partial Summary Judgment on Payments" (Doc. 41) wherein Scottsdale Insurance Company ("Scottsdale") moves for the Court to issue a ruling that no additional indemnity payments are owed under the policy.

### FACTUAL STATEMENT

On August 27, 2020, Hurricane Laura made landfall in Cameron, Louisiana and struck Lake Charles, Louisiana as a Strong Category 4 hurricane; it was the fifth strongest hurricane to ever hit the United States and is tied as the strongest hurricane to ever hit Louisiana.

Eaux owns property in Lake Charles which was damaged by the hurricane. Defendant Scottsdale Insurance Company (Scottsdale") issued a policy that covered hurricane-related wind damage which was in full force and effect on the day of Hurricane Laura's devastation. The policy limit for the property damage is $2,000,000.[1]

The policy paid replacement cost value if and when repairs were completed. The policy provisions states, in pertinent part, as follows:

---

[1] Doc. 1, ¶ 3.

3. **Replacement Cost**

    **a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of the Coverage Form . . . .

***

    **c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

    **d.** We will not pay on a replacement cost basis for any loss or damage:

        **(1)** Until the lost or damaged property is actually repaired or replaced; and

        **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

***

    **e.** We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to **f.** below:

        **(1)** The Limit of Insurance applicable to the lost or damaged property;

        **(2)** The cost to replace the lost or damaged property with other property:

            **(a)** Of comparable material and quality; and

            **(b)** Used for the same purpose; or

        **(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.[2]

***

    **f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

---

[2] Defendant's exhibit 2, Policy, SIC 00293, Doc. 41-6.

On September 15, 2020, Plaintiff's Public Adjuster, Skyline Adjusters, issued an estimate to repair the building with a total building repair/replacement cost of $2,196,188.79.[3] Scottsdale asserts that pursuant to the Policy language, Eaux was not entitled to an actual cash value ("ACV") until repairs to the building were completed. Scottsdale remarks that the estimate did not provide an ACV but was based on replacement cost.[4] Scottsdale issued a $250,000 advance payment on September 23, 2020.[5]

Scottsdale retained an expert building consultant who disputed the Skyline estimate with regard to scope, cost, and repair methodologies.[6] Eaux asserts that Scottsdale's building consultant grossly undervalued the loss and omitted several undisputed items from its estimate. On November 22, 2020, within 30 days of receiving its consultant's ACV estimate, Scottsdale issued payment for $218,193 for the undisputed ACV and advised Eaux it would continue to adjust the claim to reach agreement on the disputed issues.[7] Eaux disputes this and denies that Scottsdale continued to adjust the claim.

On September 30, 2020, Eaux issued a Notice of Intent to secure Encore's services as a general contractor on the project.[8] Because Encore was not licensed, and state law prohibited it from bidding, contracting, or performing construction work in the state, Encore was unable to begin construction until November 24, 2020. Eaux remarks that Encore could have started earlier had there been adequate funding.

---

[3] Defendant's exhibit 9, Skyline 00020-234.
[4] Defendant's exhibit 2, p. 82.
[5] Doc. 1.
[6] Defendant's exhibit 3, Louis Fey Expert Report.
[7] Defendant's exhibit 3, Fey Report; Defendant's exhibit 11, SIC 000563; SIC 00119-121.
[8] Defendant's exhibit 10, Skyline 00265-001; Defendant's exhibit 5, Encore Deposition, Vo. I, p. 56.

Eaux and Encore executed a construction contract on December 20, 2020, for a total of $1.36 million.[9] Scottsdale tendered the following additional payments: $177,731.98 on January 8, 2021, $29,440 on March 17, 2021, and $1,120,726.49 on May 18, 2021.

Eaux maintains that some of its repairs were not of like kind and quality because Scottsdale underpaid, and Eaux had to make out of pocket expenses, and in addition it still owes money to others.[10]

### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is

---

[9] Defendant's exhibit 7, Encore Contract, Encore 55.
[10] Plaintiff's exhibit I, ¶ ¶ 20,21.

merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

Scottsdale maintains that there is no dispute that based on the policy language it is only obligated to pay the cost incurred to repair the property which is a total of $1,780,089; Scottsdale has tendered $1,796,091 to Eaux. See *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 737 (5th Cir. 2010) (holding that where the policy explicitly stated that the insured is not entitled to recover costs until after the expenses are incurred, insured could not pursue a claim for anticipated costs). Scottsdale argues that because it has overpaid the claim, it is entitled to a partial summary judgment declaring that no additional indemnity payments are owed under the policy.

Scottsdale argues that the first paragraph of page 2 of Eaux's motion concerning a new claim of "lesser repairs" or "lesser roof," should be stricken because it raises issues outside the scope of Eaux's claim. The Court has reviewed Eaux's Complaint and determines that there are no allegations that Scottsdale might be liable to Eaux for allegedly

being forced to make "lesser repairs" or "lesser roof." In other words, Eaux has not alleged in its Complaint that it was forced to make repairs not of "like kind and quality."

The policy provides that Scottsdale is obligated to pay the least of: (1) the Limit of Insurance applicable to the lost or damaged property; (2) the cost to replace the lost or damaged property with other property of comparable material and quality and used for the same purpose; or (3) the amount actually spent that is necessary to repair or replace the lost or damaged property.

Eaux maintains that there are genuine issues of material fact for trial regarding its satisfactory proof of loss which it maintains was provided to Scottsdale on September 15, 2020.[11] Eaux argues that Scottsdale has misrepresented and omitted the purpose of the payments it made. For instance, the $250,000 payment was for emergency mitigation, the $218,193 payment was for undisputed ACV, the $177,732 payment was for mitigation, the $29,440 payment was for depreciation, and the $1,120,726 payment was for the remainder of the undisputed ACV.[12]

The replacement cost policy obligates Scottsdale to pay only replacement cost once the work is complete. Scottsdale maintains that the work on the property is now complete, the costs are known and paid, thus, it cannot be obligated further under the terms of the policy. Scottsdale asserts that Eaux is attempting to recover the amount of the Skyline estimate as opposed to the actual replacement cost, or in other words, what was actually spent to repair the property. Scottsdale remarks that Eaux admits that the "Skyline estimate

---

[11] Plaintiff's exhibit I.
[12] Plaintiff's exhibit 2, ¶ 8.

is 'irrelevant to the evaluation of this claim once the repair work was actually done.'"[13] Scottsdale submits summary judgment evidence that it has paid a total of $1,796,091;[14] these payments are not disputed.

Scottsdale maintains that Eaux has failed to present any competent evidence to dispute: (1) the total replacement cost value of the repairs to the property is $1,780,089; and (2) that Scottsdale's payment of $1,796,091 exceeds what is owed under the policy.

Eaux maintains that it has not been fully compensated for the covered scope of work contemplated by the $1.36 million Encore contract. Eaux argues that it should be indemnified pursuant to the "Skyline estimate" as opposed to the "Encore contract." In its opposition, Eaux presents a list of "approximate" expenses it incurred but does not provide any invoices for this Court to consider that would support Eaux's assertions that it incurred costs in excess of $2.2 million. For example, Eaux presents that it incurred an expense of $289,545 for a roof payable to Poole Roofing, however, no invoice is submitted to corroborate the expense. However, Scottsdale has presented a spreadsheet attached to Granger A. Stuck's Expert Report which indicates that Poole was paid $240,815 represented by Check #s 10005 ($80,000), #10031 ($60,815), #10064 ($100,000) for a total of $240,815.[15]

Eaux suggests that Scottsdale has underpaid because Eaux had to make concessions due to lack of funding and make certain repairs that were not of "like kind and quality". To

---

[13] Scottsdale Reply brief, p. 1, citing Plaintiff's Memorandum in Support of Plaintiff's Motion to Exclude Portions of Defendant's expert witness Granger Stuck, Doc. 50-1, p.7.
[14] Defendant's exhibit 3, Expert Report of Louis Fey, pp. 14, 21.
[15] Defendant's Exhibit 4, Expert Report of Granger Stuck, p. 1 or Attachment 12, Doc. 41-8.

create a genuine issue of material fact for trial, instead of presenting actual invoices of the repairs made and the repairs or materials that were not of "like kind and quality," Eaux submits the declarations of Jeffrey Major, a licensed Public Adjuster and owner of Skyline Public Adjusters, LLC, and Joey Odom, the sole member of Four-O, LLC which is the sole member of Eaux.

Also, Eaux maintains in its opposition memorandum that it incurred certain expenses (specifically noting that it incurred in excess of $2.2 million in expenses[16]) that it paid but does not cite to any summary judgment evidence such as invoices, canceled checks, or credit card statements, etc., to support these expenses. Eaux relies solely on the declarations of Majors and Odom. For example, Mr. Major declares the following:

> 16. The total replacement cost for the damages to the property are reflected in Skyline's September 2020 estimate and proof of loss in conjunction with the emergency mitigation expenses, and supplemental damages costs. Scottsdale has still not paid the full amount due under the policy.[17]

This statement is not supported by any evidence as noted above, and is Mr. Major's opinion, which is insufficient to create a genuine issue of material fact. Furthermore, the policy does not obligate Scottsdale to pay the Skyline estimate. The policy obligates Scottsdale to pay (1) the Limit of Insurance applicable to the lost or damaged property; (2) the cost to replace the lost or damaged property with other property of comparable material

---

[16] See p. 3 of Eaux's opposition brief.
[17] Declaration of Jeffrey Majors, Plaintiff's exhibit 1, ¶ 16.

and quality and used for the same purpose; or (3) the amount actually spent that is necessary to repair or replace the loss of damaged property.[18]

Eaux's main argument encompasses the timing of Scottsdale's payments as well as their purpose. Eaux provides summary judgment evidence to the Court that the following payments were made for the following purposes:

- $250,000 advance for emergency mitigation;
- $218,193 for undisputed ACV
- $177,732 for mitigation
- $29,440 for depreciation;
- $1,120,726 for remainder of undisputed ACV.[19]

Eaux submits that Scottsdale received "satisfactory proof of loss" on September 15, 2020, when Scottsdale received four books of estimates from Jeffrey Major with Skyline Adjusters.[20] The estimate allegedly detailed $2,196,188.79 in losses attributable to Hurricane Laura. Thus, Eaux argues that Scottsdale failed to pay the amount reflected in the proof of loss within thirty or sixty days.

The Court will defer to the merits at trial when Scottsdale received "satisfactory proof of loss" as that is an issue to be decided by the jury. As noted by Scottsdale concerning payments Scottsdale owed under the policy, the jury will decide if Scottsdale's

---

[18] Defendant's exhibit 2, Policy, SIC 00293, Doc. 41-6.
[19] Plaintiff's exhibit 2, ¶ 8.
[20] Plaintiff's exhibit 1.

payments were timely, and based on the policy language, if Scottsdale has fulfilled its obligation under the policy based on the express policy language.

## CONCLUSION

The Court finds that the issue of payments and their timelines will be deferred to the merits. Accordingly, the Court will deny Scottsdale's Motion for Partial Summary Judgment.

**THUS DONE AND SIGNED** in Chambers on this 22nd day of February, 2022.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**